# THE CITY OF JOLIET
## v.
## MATTHEW TUOHEY.

1. COLLECTIOIN OF TAXES—ORDINANCE GRANTING AUTHORITY TO COL-
LECTOR.—The City of J., by ordinance, authorized the collector of taxes to
complete the collection on warrants for city taxes, where the same were in
his hands at the expiration of his term of office. *Held*, that the only effect
of such ordinance, even if the city had power to so ordain, would be to extend
the time of the performance of those duties which the collector should have
performed during his term of office. It does not change the powers, duties or
compensation of the collector.

2. ADDITIONAL COMPENSATION—STATUTORY RESTRICTIONS.—The stat-
ute provides the manner in which the fees of officers should be fixed by the
City Council, and the salary of the collector being fixed in this manner, and he
continuing to act as collector, by virtue of the ordinance, he was precluded by
it from ever receiving any other compensation than that prescribed. He was
bound to perform all the duties incident to the office, and the rule is the same,
even though additional duties should be imposed upon him by statute or
ordinance duly passed subsequent to his election.

3. ESTOPPEL BY ACTS IN PAIS.—Appellee claimed pay for extra services
in making collection of taxes and returning delinquent lists, and insisted
that his term of office having expired he was no longer collector, and the
city was bound to pay what his services were reasonably worth. To support this
claim, appellee must necessarily rely upon the power granted him by the or-
dinance, and viewing that as only an extension of time in which to complete
the collection of taxes, appellee was still the collector, acting under the
authority of his original election. He held himself out to the people as col-
lector, received their money for taxes, and retained his fees as such, and he
should not now be heard to say that he was not. He is estopped from deny-
ing his official character.

4. NO COMPENSATION FOR PERFORMING A LEGAL DUTY—ULTRA VIRES.—
A subsequent ordinance adopted by the city required, the collector to reture
the warrants and a list of delinquent taxes, and provided that a reasonable
compensation for making a delinquent list should be paid him. *Held*, that
the law having imposed this duty upon him as city collector, the city council
had no power to allow him extra compensation therefor, as it is prohibited by
the statute.

APPEAL from the Circuit Court of Will county; the Hon.
JOSIAH MCROBERTS, Judge, presiding.

.Mr. D. P. HENDRICKS and Mr. C. A. HILL, for appellant;

contending that officers of a municipal corporation are deemed to have accepted their offices with knowledge of and reference to the compensation therefor, and that there is no implied assumpsit on the part of such corporations with respect to the services of its officers, cited Dillon on Mun. Cor. § 169; City of Decatur v. Vermillion, 77 Ill. 315; Alexander Co. v. Myers, 64 Ill. 37.

That an acting officer is estopped to deny the validity of his own appointment and election: State v. Sellers, 7 Rich. Lew. 368; State v. Mayberry, 3 Strob. 144; Mapes v. The People, 69 Ill. 523; Dillon on Mun. Cor. § 176.

Messrs. HALEY & O'DONNELL, for appellee; argued that where a municipal officer is required to perform a certain service, and no compensation is provided for such service, he is entitled to a reasonable compensation therefor, and cited. People ex rel. Hilton v. Supervisors, etc. 12 Wend. 257; Bright v. Supervisors, 18 Johns. 241; White v. Polk county, 17 Iowa 413; Doubleday v. The Clerk, etc. 2 Cow. 533.

That municipal corporations have power to make contracts for the purpose of carrying into effect the object of their incorporation: Pullman v. Mayor, etc., 54 Barb. 169; People v. Swift, 31 Cal. 26; Meech v. City of Buffalo, 29 N. Y. 198; Roun v. Cabot, 28 Ga. 50; Tucker v. Virginia, 4 Nev. 20; Miller v. Milwaukee, 14 Wis. 642.

PILLSBURY, J.    Appellee was elected city collector for the city of Joliet, in March, 1874, and after qualifying entered upon the duties of his office.

As such collector, he received the general tax warrant for such city and various warrants for the collection of special assessments for local improvements. These he held at the time his term expired, which was, as he states in his testimony, July 5th, 1875. February 4th, 1875, the city council passed the following ordinance:

" Be it ordained by the common council of the city of Joliet, that Matthew Tuohey, who was elected to the office of city collector at the annual municipal election, held on the 3rd day of

City of Joliet v. Tuohey.

March, A. D. 1874, for the ensuing year and who qualified and gave bonds as such collector, be and he is hereby authorized as such collector, to complete the collection of the warrants for the collection of the general city taxes for the year A. D. 1874, and all special assessments and taxes, where the warrants for the collection thereof may come into his hands prior to the time and date of the legal qualification, the acceptance and approval of the bond of his duly elected successor in office, and that said Tuohey shall have full power to levy and collect such general taxes and special assessments and taxes in accordance with the law for the collection of special assessments and taxes in and for said city."

Tuohey retained all such warrants after the election and qualification of his successor, from time to time making collections thereon until October 4th, 1876, when the following ordinance was adopted by the city council:

" Be it ordained by the city council of the city of Joliet:

" Section 1. That Matthew Tuohey, late city collector, be and is hereby ordered and directed to immediately make return to the county treasurer, *ex-officio* county collector of the county of Will, and State of Illinois, of the unsatisfied warrant in his hands for the collection of the revenue of the year A. D. 1874, and to make return of all delinquent lands and lots, and pieces and parcels thereof, and the taxes remaining unpaid thereon, with directions to the said county treasurer, *ex-officio* county collector, to immediately advertise said delinquent lands, lots and pieces and parcels of the same, as the law directs, and to apply to the county court of Will county, State of Illinois, at the next November term thereof, for judgment against the same in due form of law."

" Section 2.   That said collector shall be entitled to a reasonable compensation for making the said delinquent list and returns to said county treasurer, *ex-officio* collector."

In accordance with the requirements of this ordinance, Tuohey made out such delinquent list and filed the same with the county collector.

He now brings this suit against the city of Joliet to recover for sixteen months' labor collecting taxes at $60 per month,

and for making delinquent lists in July, 1875, to the city council, and to the county collector in October, 1876, for which he charges in his bill of particulars the sum of $400. The common counts only were filed by him, to which the city pleaded the general issue and set-off. The plea of set-off was subsequently withdrawn, and the cause tried upon the general issue. Appellee recovered verdict and judgment for $800, and the city appeals·

The appellee claims that by an ordinance of the city he was required, as collector, to make report to the city council of the delinquent lands and personal taxes of 1874, which he did, and then by the above quoted ordinance of October 4, 1876, he was further required to make and file a delinquent list with the county collector, and as such was no part of his duty as city collector, he is entitled to recover extra compensation therefor.

He further claims that the collection of the taxes after July 5, 1875, was no part of his duty, and, therefore, he is entitled to recover a reasonable compensation for the sixteen months he was engaged in collecting such taxes.

Upon these two grounds he bases his rights to recover.

On the seventeenth day of February, 1874, the city council passsed an ordinance fixing the salaries of city officers, in which it was provided, "That the collector receive two per cent. on all moneys actually collected."

The report of appellee to the city council of general taxes and special assessments, collected and delinquent, shows that this model tax-gatherer not only retained the two per cent. upon what he collected, but in every case charged his commission upon the face amount of the warrant.

For instance, the general tax warrant amounted to $85,667.08, of which he returned $21,033.92 as delinquent, and yet credits himself with, and retains the fees for collection, on the whole amounts of the warrant, the fees amounting to $1,713.34.

Again, warrant No. 10, for constructing sewer on Chicago and Jefferson streets was for $8,872, which he charges himself with and credits himself with amount of delinquent list uncollected $8,691, and by fees for collection, $177.44.

He managed to collect on this warrant $181, and charged the

city $177.44 for it, and retained his fees out of general taxes in his hands.

Warrant No. 8, for opening Ross street amounted to $3,079.15. Before Tuohey collected any of it, the whole assessment was dismissed by city council, yet he charged the city $61.50 as collector's fees and retained it out of general funds.

The aggregate of warrants received by him as collector, was $99,631.93, upon which he charged and received two per cent. amounting to $1992.63, at the same time returning as delinquent, abated and dismissed the sum of $33,701.56. This summary shows that he has already received $674 more than he was entitled to under the provisions of the ordinance fixing his salary, and yet he comes into a court of law, and asks that he may have another chance at the city treasury.

Under such circumstances, the claim of the appellee does not appeal very strongly to the favorable consideration of a court of justice.

He is entitled to the cold steel of the law, nothing more.

The only authority of appellee to retain the warrants and proceed with the collection of the taxes after his term expired, was the ordinance of February 4th, 1875.

We shall not stop to inquire whether the city council had the power to pass the ordinance in question.

If it did, the ordinance can have the effect only of extending the time for the performance of those duties which he should have done during his term of office. It does not purport to change the powers, duties or compensation of the collector.

If the city did not possess the power to enact such an ordinance, then it is void for want of such power, and the city can interpose the plea of *ultra vires* as a perfect defense to the claim of appellee. Dillon on Municipal Cor. Sec. 381.

The appellee, however, relies upon the doctrine, as he must necessarily do, that the city council had the power to extend the time for him to complete the collections of the warrants, thereby in effect extending his term of office.

Upon this view of the case, he was still the collector, acting under the authority of his original election, and the fact that he accepted the provisions of said ordinance, continued acting

as such collector and retained the fees allowed by law, shows conclusively that he considered he was still collector.

He held himself out to the people as collector, received their money for taxes and retained his fees as such, and now he shall not be heard to say that he was not. We are of the opinion that he is estopped from denying his official character.

By an act of the General Assembly in force April 23, 1873, Rev. Stat. 1874, page 252, it is provided that:

" It shall and may be lawful for the common council or legislative authority of any city in this State to establish and fix the amount of salary to be paid any and all city officers, as the case may be, except members of such legislative body, in the annual appropriation bill or ordinance made for the purpose of providing for the annual expenses of any such city, or by some ordinance prior to the passage of such annual appropriation bill or ordinance ; and the salaries or compensation thus fixed or established shall neither be increased nor diminished by the said common council or legislative authority of any such city after the passage of such annual appropriation bill or ordinance, during the year for which such appropriation is made, and no extra compensation shall ever be allowed to any such officer or employe over and above that provided in manner aforesaid."

Under this statute, the salary of appellee was fixed, and as he continued to act as city collector, as we have seen, he is prohibited by it from ever receiving any extra compensation over and above that provided.

He is bound to perform all the duties incident to the office for the compensation fixed, and the rule is the same, even though additional duties should be imposed upon him by a statute or ordinance duly passed subsequent to his election, and the time his compensation was fixed. City of Decatur v. Vermillion, 77 Ills. 315.

If appellee was not satisfied with the two per cent. upon moneys actually collected, he was under no obligation to accept the office with inadequate compensation.

He voluntarily accepted the office knowing what pay he was to receive and on the same terms accepted the provisions of the

ordinance extending the time for the completion of his duties.

The delinquent lists returned by him to the common council were made under the provisions of an ordinance in force at the time of his election, defining the duties of collector and was clearly one of the duties assumed by him at the time of his acceptance of the office. The lists returned by him to the county collector in October 1876, he claims were so made and returned under the provisions of the ordinance of Oct. 4th 1876, the second section of which allowed him reasonable compensation therefor.

This ordinance imposed no additional duties upon appellee, but simply required him to *immediately* make the return to the county collector, that he should have done long prior to that date.

Section 4 of Article 9, of the Constitution of 1870, provides that "The General Assembly shall provide in all cases where it may be necessary to sell real estate for the non-payment of taxes, or special assessments for State, county, municipal, or other purposes, that a return of such unpaid taxes, or assessments, shall be made to some general officer of the county having authority to receive State and county taxes; and there shall be no sale of said property for any of said taxes, or assessments, but by said officer, upon the order or judgment of some court of record."

The Legislature, for the purpose of complying with such requirements of the Constitution, by Act of May 3, 1873, Rev. Stat. 1874, p. 887, Sec. 178, enacted that:

"Where any special assessment made by any city, town or village pursuant to its charter, or by any corporate authorities, commissioners or persons pursuant to law, remain unpaid in whole or in part, return thereof shall be made to the county collector, on or before the tenth day of March, next after the same shall have become payable, in like form as returns are made for delinquent land tax."

Even before this legislation, the return of delinquent taxes and special assessments must be made to the county collector, or no sale could be had. Hills v. City of Chicago, 60 Ill. 86.

The law then, having imposed this duty upon him as city

collector, the city council had no power to allow him extra compensation, as it is prohibited from so doing by the statute. City of Decatur v. Vermillion, 77 Ills. 315.

It is urged however, in this case, that as the city withdrew its plea of set-off, no credit should be given for the amounts retained by the appellee.

A plea of set off was not necessary. The evidence clearly establishes the fact that the appellee retained as his compensation a much larger amount than he was entitled to. He made his report to the council of the amount received by him, the amount collected and paid to the city treasurer, and as another proof of the looseness with which our municipal affairs are conducted, the council approved his report and allowed him to retain as his fees the whole amount.

It was therefore payment, and payment can be shown under the general issue.

The appellee has shown no right to recover, therefore the judgment of the court below will be reversed.

Judgment reversed.