STATE OF MISSOURI, EX REL. W. B. HENSICK, Appellant, *v.* A. J. SMITH, AUDITOR, Respondent.

#### March 20, 1878.

In the absence of any statutory provision for the payment of such expenses, the St. Louis Criminal Court has the power to order that a jury be kept together, and their meals furnished them; and the expense of feeding such jury is a necessary one, the account for which is to be audited and allowed by the court; and when this is done, it is the duty of the city auditor, upon presentation, to certify the balance thus found; and if in proper form and itemized as the law requires, and the amount required to pay it has been appropriated, and is in the treasury for the payment of the curre: t expenses of the city, to draw his warrant on the treasurer in payment of the account. In such a case, the auditor's duties are ministerial. To the court alone belongs the right to determine what expenditures are necessary to carry on the public business of the court with efficiency.

APPLICATION for *mandamus.*

*Peremptory writ ordered.*

HARRIS & JOY, for relator: In capital cases, the jury

should not separate after being empanelled. — *McLean* v. *The State*, 8 Mo. 154; *The State* v. *Brown*, 33 Mo. 483. And the city of St. Louis is liable for the expense of boarding a jury while so kept together, as for other necessary expenses of the St. Louis Criminal Court. — *The State* v. *Maus*, 41 Mo. 470.

LEVERETT BELL, for respondent: The city is not liable for food furnished jurors serving in the Criminal Court. — Acts 1874, p. 238; *The State* v. *Clark*, 57 Mo. 25. The pretended contract between the relator and the city is invalid. — Acts 1874, p. 44; City Charter, secs. 7, 11, art. 16. The auditor's powers are discretionary, and will not be controlled by *mandamus*. — City Charter, sec. 21, art. 4; *Decatur* v. *Paulding*, 14 Pet. 497; *Bledsoe* v. *Railroad Co.*, 40 Texas, 537; High on Rem., secs. 102, 346.

BAKEWELL, J., delivered the opinion of the court.

The application of the relator in this case shows a refusal on the part of the city auditor to draw a warrant upon the city treasurer of the city of St. Louis for an account duly certified for payment by the judge of the St. Louis Criminal Court. The case is to be considered upon a motion to quash the alternative writ heretofore issued by this court. The facts stated in the application are to be taken as true.

It appears that on Nov. 20, 1877, the judge of the St. Louis Criminal Court directed the marshal of that court to receive bids for furnishing meals to jurors in the cases in which the court might order that the jurors be kept together during the progress of the trial; that various bids were presented and examined, and the court thereupon ordered the marshal to contract with relator, who was one of the bidders, at the rate of thirty-five cents for each meal, and to certify all bills rendered under such contract to the court for examination and allowance; that the marshal, accordingly, contracted with relator; and that from Nov. 22, 1877, to Feb. 22, 1878, relator furnished the jurors, and to

the marshal in whose custody they were, meals at the rate named, to the value of $150.15. Bills were rendered by the relator to the marshal, setting forth the dates at which the meals were furnished, the style of the case in which each jury was sitting at the time, and the separate charge and number of meals furnished to each jury. The correctness of each bill is certified upon its face by the marshal, and each bill is marked " examined and allowed " by the judge of the Criminal Court, in open court. These bills were presented to respondent, with the demand that he audit them and draw his warrant upon the treasury for the amount; and although there was at that time in the hands of the city treasurer a balance unexpended of appropriations for the current expenses of the city, more than sufficient to pay these accounts, the auditor refuses to audit them and to draw a warrant for the amount due upon them.

It is the duty of the judge of the Criminal Court in many cases to direct that the jury shall be kept together until discharged by him at the close of the case. *McLean v. The State*, 8 Mo. 153 ; 33 Mo. 483. Whilst kept together, they must be fed, in common with the officer in whose custody they are. Whilst the court has the right to direct that the jurors shall not choose, each for himself, where he shall eat, it has no power whatever to compel each juror to pay for his own meals. The feeding of the jurors is, therefore, a necessary expense, without incurring which the business of the court could not be carried on, and the administration of criminal justice must come to an end. The general law directs (Wag. Stat. 431, sec. 4) that all accounts for expenditures accruing in courts shall be paid out of the treasury of the county in which the court is held, in the same manner as other demands, and (Wag. Stat. 424, secs. 41, 42) shall be audited and adjusted by the court in which the services were rendered. That tribunal has the means of determining the correctness of the account, as to which the auditor can know nothing ; and to that tribunal

alone have the people delegated the power of determining what expenditures are necessary to carry on, with efficiency and decorum, the public business of the court. There is manifestly, therefore, no occasion for any further action on the part of the auditor. His duty is merely ministerial; and whenever a court has certified to the correctness of an account presented by the sheriff or marshal of the court, for necessary things furnished for the use of the court, and ordered by the court, the auditor must allow the demand. *The State, etc.,* v. *St. Louis County Court,* 42 Mo. 498. To hold otherwise would be to say that the people have committed to the auditor the power of suspending the session of any court in the city at his pleasure, which is manifestly absurd. If the judge of a court of record certifies that an account for meals furnished to jurors by his direction, in his court, through the marshal or sheriff, is correct, there is an end of the matter. If the judge has abused his power in directing the expense, he is not responsible for this to the auditor, and the auditor cannot review his acts. To hold otherwise would be to concede to the city auditor a control over the judiciary department of the government, and a power of prescribing to judges the mode in which they shall discharge the duties of their office, which the Legislature and the governor of the State combined do not possess. *Houston* v. *Williams,* 13 Cal. 24. The account in question was not an unsettled account; it had already been examined and adjusted by the proper officer; and it was the duty of the auditor, upon its presentation, to certify the balance already found; and if it was in proper form and itemized as the law requires, as it was in this case, and if the amount required had been appropriated, as the fact appears to be, to draw his warrant on the treasury in payment of the account. Chart. 66, sec. 21.

Our attention is called to a special act applicable to St. Louis County (Sess. Acts 1874, p. 238), which empowers the County Court to provide food for jurors whilst in cus-

tody of the marshal, in murder trials, in the Criminal Court;
and it is said that this is a legislative construction of the
law, and a declaration that jurors are not to be fed at the
public expense, except in murder cases, and then only in
the discretion of the County Court, or, in the city of St.
Louis, of the Municipal Assembly. It is unnecessary to
dwell upon this point. It is disposed of by what has been
said already. To direct that a jury shall not be fed at the
public expense, is to direct that it shall not be kept together
during a protracted trial. This is a matter in the control
of the judiciary department of the government; and will
remain so, unless the people, in their sovereign capacity,
shall change the organic law of the State in that particular.
If the act in question must receive the interpretation which
counsel for respondent would put upon it, its provisions, so
far, could have no obligatory force; to concede such an
effect to it would be to sanction a palpable encroachment
upon the province of an independent department of the
government. We think counsel misinterprets the act; but
the intention of the Legislature that the county, and not the
State, should pay, clearly appears.

It is said that the pretended contract of relator is invalid,
and that therefore the claim should not be audited.
Laws 1874, p. 44; Chart., art. 4, sec. 21. The contract
need not have been set out. Its validity is not in question.
The facts that the meals were furnished to the marshal by
order of the court, and for the purposes of the necessary
business of the court, and that unless they had been fur-
nished to the marshal for the jurors, the court could not
have properly discharged its duties, and that the account
was certified to be correct by the judge, sufficiently appear.
From these facts an obligation to pay will be inferred
( *Commissioners* v. *Hall*, 7 Watts, 290); and the unneces-
sary statement about the bids and the contract do not hurt
relator's case.

It is contended by respondent that all costs in cases of

felony are payable by the State. The fees chargeable to the State in such cases are those specially enumerated in the act. Wag. Stat. 618. The provision for paying the board and lodging of jurors which existed in the Revised Statutes of 1855, p. 771, sec. 14, was omitted in the revision of 1865. A bill to provide for the payment of these costs by the State was introduced into the House in 1866, and failed to pass (*The State* v. *Clark*, 57 Mo. 25) ; since that time, these bills, up to the separation of the city and county, have been paid, as I ascertain on inquiry, out of the county treasury. The law and the practice remain unchanged since Judge Napton made the same inquiry, before delivering the opinion of the Supreme Court in *The State* v. *Clark*, 57 Mo. 25. It is quite clear, from that case, that these expenses are not chargeable to the State. In *Watson* v. *Moniteau County*, 53 Mo. 133, the question came up as to which of two counties was liable for the board of a jury in a murder case. That the liability was that of the State was not contended. The Supreme Court says that, though there is no express statutory provision for such an expense, there is no question of the power of the court to make an order keeping the jury together, and directing that they be provided with board and lodging, and cites *Commissioners* v. *Hall*, 7 Watts. 290, where Chief Justice Gibson held a county liable for the expense of boarding and lodging a jury, saying that such expenditures are, like light and fuel, incidental to the holding of a court, and raise an implied obligation on the part of the county to pay.

Except in cases of more than ordinary magnitude or importance, applications for writs of *mandamus* made in the first instance to this court will be refused. *The State ex rel.* v. *Green et al.*, No. 349, this court. The determination of the question in the present case concerns the public business. The Criminal Court could not empanel a jury in a capital cause if it had no means of feeding them during the progress of the trial ; because it would be error to permit the jurors

to separate, and it might be the grossest cruelty to keep them together. We will take notice of the fact that a term of that court has just begun ; and we consider that the rule generally adopted by appellate courts in regard to applications for extraordinary remedies does not necessarily apply in a case where the public interests, as well as the rights of a private suitor, are involved.

The motion to quash the writ is overruled ; and, unless respondent desires to plead over, the peremptory writ will be issued. All the judges concur.