THE STATE OF MISSOURI EX REL. S. HOWARD *v*. A. J. SMITH, AUDITOR, Respondent.

April 29, 1884.

1. MUNICIPAL CORPORATIONS — LEGISLATIVE POWER — CRIMINAL COURT — JANITOR. — The legislative department of the city government can not control the power of the criminal court to determine whether a person appointed as janitor of the court, the proper performance of whose duties is necessary to the business of the court, is a fit person to have this charge.

2. ———— The commissioner of public buildings has the power, and it is his duty, to appoint such janitor, but he can not force upon the court one who is unworthy, or who is unknown to the court.

3. ———— MANDAMUS. — A failure to appoint a janitor in whom the court has confidence creates a vacancy, which the judge of the court may fill; and the auditor may be compelled, by *mandamus*, to audit a proper bill for services rendered by such appointee.

APPLICATION for *mandamus*.
*Peremptory writ ordered*.

THOMAS B. HARVEY, for the relator:   The services of a janitor are necessary to the business of the court, and when the services are performed at the instance of the court, and the account therefor allowed by the court, the city auditor may be compelled to allow the demand. — Rev. Stats., sects. 1061, 1062; *The State ex rel.* v. *Smith*, 5 Mo. App. 427 ; *The State ex rel.* v. *St. Louis*, 42 Mo. 498.

LEVERETT BELL, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an application for a writ of *mandamus* to be directed to the auditor of the city of St. Louis, command-

ing him to audit and draw his warrant upon the treasurer of the city of St. Louis for the payment of certain accounts in favor of relator, for services as janitor of the St. Louis Criminal Court.

These accounts are $17.81 for ten days' services, from 22d to 31st December, 1883, at $55 a month, and $55 for services during the month of November.

The petition alleges that the St. Louis Criminal Court is a court of record, having exclusive original jurisdiction for the trial by jury of all felonies committed in the city of St. Louis, which has a population of 400,000 people ; that its business requires that it should remain in session throughout the entire year, on almost every day ; that, as a requisite part of the machinery of said court, grand juries are impanelled at each term, and are in almost continuous session in rooms adjacent to the court-room. That the law and public policy require that the notes of testimony given before them, and their deliberations, should be guarded with the utmost privacy, and that their findings and the indictments based thereon should be protected with the greatest care ; and that, in the room used for the grand jury, and in the adjoining room in which are drawn indictments, important papers are frequently exposed to any one having access to these rooms. That two large rooms connected with the court-room are occupied by the clerk of the court and his deputies, in which rooms are kept the valuable records and documents pertaining to the court business, which can not be at all times protected from any designing person who has access to these rooms. That the law necessitates the continual presence at said court of a circuit attorney, assistant circuit attorney, and circuit attorney's clerk, for whom are provided two offices adjoining said court-room, in which are kept a library, private desks, and other suitable furniture, and wherein are deposited the testimony and proceedings of all prior grand juries, the testimony given at examinations in the court of criminal correction of all capital cases, the

testimony and other records of inquests held by the coroner, indictments and pleadings in pending cases, official correspondence, and other valuable papers pertaining to the business of the court; and that stolen property and weapons used by homicides, and other instruments needed as evidence, are kept in these rooms, some of which articles, by reason of their size and shape, must remain exposed in these rooms; and that the business of the circuit attorney and his assistants requires them to pass continually in and out of these rooms in such a way that these valuable documents can not be placed beyond the reach of any person having access to these offices; that there is, also, adjoining these rooms, a private office for the judge of the criminal court, in which is a library and other furniture, and that the business of the judge requires that valuable papers and private memoranda should be in this room; that the nature of the business of the court draws vast numbers of persons to its sittings; that one hundred jurors are in constant attendance, as well as large numbers of witnesses before the court and the grand jury; and that, from these circumstances and the duties of the officials, these rooms are much frequented, and to keep them in decent and wholesome order they need the attention of a janitor who must have keys to the rooms and free access to them during the presence and absence of the officials. That in view of these facts, and the further fact that the building is thronged with members of the criminal classes, friends and advisers of the accused, many of whom would seize any opportunity to make away with evidence and other documents, it is important that the keys of these rooms and the right of entry to them at all times should be confided only to persons who have and deserve the confidence of the officials; that, in view of these facts, the judge of the criminal court, having confidence in the fitness and integrity of the relator, made an order, on the 22d of December, 1883, that the relator be appointed as janitor of these rooms at a salary of $55 a

month, which was a reasonable remuneration; and that relator entered upon his duties as janitor, at that date, and faithfully discharged them until the 1st of February, 1884; and earned the amounts set forth in the bills, which were examined, allowed, and certified for payment by the court on the 11th of February, 1884; that the relator has presented the account, so allowed and certified, to the respondent, who is auditor of the city of St. Louis, and as such bound to audit and draw his warrant on the city treasurer for the amount of these bills, which respondent refused to do; that by ordinance of June 22, 1883, an appropriation was made by the municipal assembly of St. Louis providing a fund for the payment of the expenses of the city government, of which $750 remains in the treasurer's hands.

The petition further states that application for the relief asked has been made to the circuit court and refused. The petition is accompanied with various exhibits.

To the alternative writ issued on this petition, the auditor made return, admitting the allegations as to his official position and the presentation of these demands, and saying that they were disallowed by him because they represent no indebtedness payable out of the city treasury, and denying all other allegations of the petition and writ.

The return further sets up that, by virtue of the scheme for separation of the city and county of St. Louis, and the city charter, the ownership and control of the building in which are the court-room and other rooms in question were vested in the city; and that, by section 3, chapter 5, of a city ordinance of the 29th of March, 1881, it is provided that this building, called the "Four Courts," shall be under the charge of an officer designated by the commissioner of public buildings; and that section 5 of the same ordinance provides that said commissioner shall make all necessary arrangements and regulations for the care and cleaning of said building, and he is authorized to appoint a janitor and four assistants for the building, and also a night watchman,

whose salary is fixed by section 8, that of janitor at $780 a year, and that of his assistants at $55 each a month, this appointment to be approved by the board of public improvements ; that these officers, before the dates mentioned in the petition, were duly appointed according to ordinance, and for the purpose of taking charge of the building and rooms in question, and are competent, honest, faithful, and efficient, and fully capable to perform these duties by keeping these rooms clean and in good order, and are paid by the city, and have given bond to the city as required by city ordinance ; and that their services to take charge of the rooms in question were tendered by the commissioner of public buildings to the judge, clerk, circuit attorney and his assistants, and were by them rejected, and these janitors were refused all access to the rooms in question by these officials ; that the employment of relator was without warrant of law, and created no indebtedness against the city.

The answer of relator to this return admits the employment by the commissioner of a janitor and four assistants for the building, and says that the services of one of the assistants was tendered to the officials above named ; that he was a colored man, unknown to these officials, or to any of them, for which reason they deemed it imprudent to give him free access to the rooms in question, except the court-room, and refused to him the keys of these rooms ; and that, upon being refused access to the other rooms, he refused to clean the court-room.   The answer denies the legal right of respondent to appoint a janitor for the rooms and offices of the judge and other officers of the criminal court. Respondent filed a general denial, by way of reply, to this answer.

Upon these pleadings the parties went to trial.

Of the functions of the judge of the criminal court and the circuit attorney and of the clerk of the criminal court, we take judicial notice.   The allegations of the petition as to the use to which these rooms are put, the numbers and

characters of the persons frequenting them, the documents which they contain, and the manner in which these documents are kept, were sufficiently established by the evidence introduced at the hearing. The allegations as to the appointment of relator by order of court, and as to the reasonable value of his services, were also proved. It was shown that his character was good, that he had been employed as janitor of the rooms in question for over four years, and was well known to the judge and other officials, and that he had, and deserved, their confidence, and that he was competent and efficient. The ordinances referred to in the pleadings were introduced in evidence.

The testimony tended to show that a head janitor and four assistants were appointed by the commissioner of public buildings to take charge of the Four Courts building, and that this force was entirely sufficient for the work, and was willing to do it, and that no complaints were, at any time, made to the commissioner of misconduct or neglect of duty on the part of the head janitor or of any of his assistants. It has always been the custom for the commissioner to defer to the wishes of the judge and clerk of the criminal court in the appointment of the assistant janitor who had charge of the court-room and the rooms used by the grand jury, the clerk, and the judge. When Mr. Kledus was nominated commissioner, in April, 1883, letters were addressed to him by the judge, clerk, deputy clerks, circuit attorney, assistant circuit attorney, deputy sheriff in charge of the criminal court, and by the official reporter of the court, stating that Stephen Howard had for years been janitor of the court, that he was faithful and diligent, and that his reappointment was specially desired and earnestly requested by all these officials. These applications were renewed when Mr. Kledus was appointed commissioner in November, 1883, and on the 7th of November the circuit attorney addressed a letter to the mayor on the subject, in which he stated that Howard was known to him for some

time as faithful, honest, and efficient, and that, being desirous that a trustworthy person should have charge of the apartments and offices of the court, he earnestly recommended Howard for the position, in which he had given entire satisfaction in the past. Mr. Kledus became commissioner on November 5, 1883. He appointed on the 17th of December, 1883, a head janitor and four assistants. These latter were all colored men, and one of them was Cyrus Brown, another, a man named Herbert. The head janitor, at first, was Herman, who was already in that position; but he was replaced in about two months by Berry, who had formerly been an assistant janitor. These men were all bonded officers, and they qualified according to law. Cyrus Brown was appointed to take charge of the rooms appertaining to the criminal court, except the grand jury room, which was on another floor, and which was assigned to Herbert, who was discharged after a month's service, for what reason does not appear. Howard was discharged. Brown was a man of 52 years of age, his regular business was that of a cook, but he had made his living as he could, as general utility man in bar-rooms, gambling houses, and other places where a handy man is needed. He did odd jobs and carpet shaking, and had been a sleeping-car porter in his time. Nothing whatever is shown, or charged, against his character for honesty, or his capacity or willingness for the work to which he was detailed. Mr. Kledus· says that Brown applied to him personally for the place of assistant janitor, that he liked his looks and appointed him. That Howard was recommended to him by the officials of the Four Courts, but he saw that there was a disposition on their part to interfere with his power to appoint whom he pleased, and he determined to exercise his power. He said, at first, that he removed Howard solely because he was told that, if he did remove him, the court would appoint its own janitor. Afterwards he said that that was not his sole reason; but that he was

not bound to give reasons for his action beyond his own will and power.

The janitors were assigned to their posts on the 22d of December, but, the 23d being Sunday, they did not go to work until the 24th. Kledus says that Staed came to him whilst he had Howard's application under consideration, and told him that, if Howard was not appointed, they would appoint their own janitor themselves; and that he finally elected to appoint Brown, who was confirmed by the president of the board of public improvements. Before the appointment of Brown, the assistant janitors, except the night watchman, had all been white men.

It appears that Herman and Brown refused to have the court-room cleaned, unless Brown should be allowed to clean the other rooms. The court-room remained in a filthy condition during five days, when the court was not in session and Howard was sick, towards the end of December, and Herman sent Brown to clean it and remove some rubbish made by putting up ventilators in the room; but Staed, the clerk of the court, sent Brown away. On the 24th, application was made for the keys of his private room, to the judge, by Herman and Besley, but the judge said that they had appointed their own janitor. A similar answer to a like application was made by Staed, and by Finney, his head deputy. No objection was made to Brown, except that the judge and clerk and other officials knew nothing about him.

It is obvious that a janitor is a necessary expense of the criminal court. If the commissioner of public buildings, by refusing to appoint a janitor for the various rooms required for the business of that court, could deprive the court of the services of a janitor, it would rest in the hands of that official whether the administration of justice in criminal matters committed to the jurisdiction of the St. Louis criminal court should be suspended or not, which is absurd. No doubt, if no provisions were made by the city

of St. Louis to furnish a janitor for the criminal court, the court might appoint one, and audit and allow his account for services, under the general law applicable to such subjects, and the city auditor must in that case allow the demand. *The State ex rel.* v. *Smith*, 5 Mo. App. 427.

It is no answer to say: The city has made provision for janitors in the building in which the criminal court holds its sessions, and for their payment; under these provisions a janitor has been appointed for the criminal court, which the court must accept, because he is appointed by the officer who has, under the city charter, the power to make this appointment. I say that such answer is insufficient, if it appears that the janitor thus appointed is entirely unfit for his position and incapable of fulfilling it, or if he is a notoriously dishonest man. The janitor of the St. Louis Criminal Court must be a man in whom confidence can be reposed; his relations to the officers of the court are, to a great extent, of a confidential character. A dishonest man, who had access day and night to the clerk's office, grand jury room, court-room and private room of the judge, would seriously add to the impediments which the corrupt elements of society in a large city throw in the way of the administration of the criminal law. No ordinary precautions would be a protection, under such circumstances, to the valuable documents in charge of the officials of the court. It can hardly be questioned that the appointment by the commissioner of public buildings of a notoriously incapable or disreputable man, to whom the officials of the court ought to deny access to the rooms, would be equivalent to no appointment at all.

It may be said that such is not the case presented. The case, however, is this: The commissioner of public buildings appointed as janitor a man whom no official of the court knows anything about, and for the purpose of making this appointment, against the earnest remonstrances of every one of these officials, removes a faithful janitor who has

been long in his place and whose character is established. We are of opinion that such action is no proper appointment of a janitor, and that the judge and clerk of the criminal court are not to be compelled, against their judgment, to give to this unknown man access to the offices of the court and to the private room of the judge. If these officials ought to reject the services of a janitor known to them to be unfit for the place, they may for the same reasons refuse to accept a janitor of whom they know nothing at all. The mere fact that an old and tried servant of the court is removed without any reason assigned, and a new man, unknown to any official of the court, appointed in his place, would seem to be sufficient to put a vigilant judge upon his guard, and to lead him to refuse to this stranger access to his private room and to the other rooms connected with his court. Ordinary regard to the public interests should teach the commissioner of public buildings to defer to the united suggestion of the judge and clerk and circuit attorney in appointing a janitor for the criminal court rooms; and, if he declines to do so, and would remove an old and faithful janitor against whom nothing is suggested, and whom all the officials of the court desire to retain, it would seem that the judge, to whom the people have delegated the power of determining what expenditures are necessary to carry on with efficiency the business of the court, may refuse to accept the new janitor, and if the commissioner refuses to appoint the man whom the judge designates, that the judge may consider the office vacant, and himself appoint a man to perform its necessary duties.

The difficulties surrounding the administration of criminal justice in this city are already great, and they are matters of public notoriety. We are not willing to add to them by holding that a commissioner of public buildings, or any other official, may thrust upon the officers of the criminal court, against their will and judgment, a servant of whom

they know nothing and impose upon them the alternative of committing to him the keys of the grand jury room, clerk's office, court-room and judge's private room, or leaving these rooms without any attendance at all.

The general principle involved is discussed in the case of *The State to use* v. *Smith* (*supra*), and the cases cited in that opinion.

The legislative, judicial, and executive departments of the government are distinct. The organic law of the state apportions the powers of the government, and imposes certain duties on the several departments. The judicial power of the state is, by the constitution, vested in the courts. The legislature raises and applies the revenue, and thus holds the public purse; but, though it possesses the larger share of power, it is no more a representative of the sovereign power than are either of the other departments; and the courts will always so interpret legislative enactments as to preserve the proper independence of the judiciary and the executive. Where a deficiency of public accommodation requires an expenditure by a court, it must be at the public charge; for, as is remarked by Chief Justice Gibson in *Commissioners* v. *Hall* (7 Watts, 290), this is as much a part of the contingent expenses of the court as the price of the fire consumed in the court-room. So, in *County of Boone* v. *Todd* (3 Mo. 140, [103]) the clerk of the court had rented a room for the clerk's office. It was objected that the demand allowed by the county court was not one the county was bound to pay. The words of the statute relating to the subject were, that, each clerk should procure a seal and press, " and provide, and safely keep and preserve suitable books, furniture, and other necessaries for their respective offices." It was argued that a room for the clerk's office was not *ejusdem generis* with the things named, and therefore could not be included by the interpretation under the phrase " other necessaries " so as to entitle the

clerk to rent a house. But the supreme court held that a house in which to perform his functions was a necessary incident, as no clerk's office could be kept without it.

The general·statutory provision is (Rev. Stats., sects. 1061 and 1062) that the officer attending any court shall "furnish stationery, fuel, and other things necessary for the use of the court, whenever ordered by the court,", and that the court shall audit and adjust the accounts of the officer attending it, and certify the same for payment. If there were any statutory provisions in substantial conflict with these, as depriving the courts of the power to determine what are the necessary contingent expenses of the business of the court, and to make them a public charge, to accord to them obligatory force would be to sanction an encroachment on the independence of the judiciary department of the government which would not be sanctioned by any court having proper respect for its own dignity and independence. Within its own sphere, the court can not be trammelled by legislative restrictions which, if enforced, would have the effect of seriously embarrassing the court in effectually performing the functions for which it was created.

The duty of making provision for the State courts exercising jurisdiction within the city of St. Louis, is, by statute, imposed on the city government, which, in relation to the state, has some functions of a county. 2 Rev. Stats., p. 1565. The municipal assembly is to provide by ordinance for the election and appointment of city officers, and to establish their compensation and that of their assistants, and may create any office, and provide for filling the same. 2 Rev. Stats., p. 1587, etc. ; City Charter, ch. III., sect. 26, subd. 8.; Art. XVI., sect. 17 ; Art. IV,, sect. 45. In accordance with these provisions are the provisions of the revised ordinances of the city pleaded by respondent, which place all public buildings under control of the president of the board of public improvements and of the

commissioner of public buildings. This ordinance further provides, that the commissioner shall make all necessary arrangements for cleaning the Four Courts, and authorizes him to appoint for it a janitor and assistants, not to exceed four. These appointments are subject to approval of the board of public improvements, and these officers may be removed by the mayor for cause, and the janitors are to give bond, to be approved by the mayor. All this is strictly within the course of duty of the legislative department of the government, which must provide for the service of the courts. The court ought, undoubtedly, to accept such proper provisions for its service as are made under these ordinances. But the court can not be compelled to accept as its janitor an unfit person and give him access to the property and papers in the private room of the judge, the clerk's office, the grand jury room and court-room; nor is it bound to permit the substitution of a janitor entirely unknown to any officer of the court, in the place of a competent man familiar with the duties of his position, and who has, by long service, acquired and deserved the confidence of the court. If the city authorities will not defer to the judgment of the judicial officer in a manner that so intimately affects the business of the court as the appointment of its janitor, where the duties and responsibilities are of the character described above, and it becomes necessary to determine whether the court or the commissioner of public buildings shall finally determine to which man shall be committed the keys of these rooms, the answer is, that the selection must be left to the court. To consult the commissioner of public buildings is a proper act of courtesy; but, in such a matter, the court must act at its discretion, notwithstanding his dissent. The necessity for keeping the rooms and offices in proper order, creates an emergency that requires the prompt action of the court. The court undoubtedly does not appoint under the ordinance. But where the commissioner of public buildings will appoint

no janitor whom the court will accept, then any necessary expenditure in the matter, being induced by a deficiency of public accommodation, becomes a public charge as part of the contingent expenses of the court. *Commissioners* v. *Hall, supra.* It appears from the testimony that the charge for the services was a reasonable and proper charge.

It further appears from the testimony of Mr. Romer, the deputy auditor, that there was a fund for court expenses, out of which the accounts in question here might have been paid, and that he rejected them because the expense was not provided for by a special appropriation, and because the salaries account made no provision for this additional janitor for the criminal court, but recognized only the head janitor and his four assistants.

We think the peremptory writ should go. It is so ordered. All the judges concur.