The State, *ex rel.* Hovey, *v.* Noble *et al.*

No. 14,804.

## THE STATE, EX REL. HOVEY, *v.* NOBLE ET AL.

COURTS.—*Judiciary an Independent Department.*—The judiciary is a separate and an independent department of government. Const., art. 3.

SAME.—*Constitutional Powers.*—The courts are exclusively invested by the Constitution with the whole judicial power of the State, as such power existed when the Constitution was framed. Const., art. 7, sec. 1.

SAME.—*Assistants.*—*Selection of.*—Neither the Governor nor the Legislature can select persons to assist the courts in the performance of their judicial duties.

SAME.—*Courts Choose Assistants.*—Where assistants are necessary to enable judges to discharge their judicial functions, the power to choose such assistants resides in the court.

SAME.—*Power of Appointment.*—While the power of appointment is intrinsically executive, it may be exercised by a court or by a legislative body as a necessary incidental power.

SAME.—*Supreme Court Commissioners.*—*Legislature can not Appoint.*—The Legislature can not appoint commissioners of the Supreme Court to assist the judges in the performance of their duties, and the act of 1889 (Acts of 1889, p. 41), assuming to confer that power, is unconstitutional.

SAME.—*Supreme Court Commission Unconstitutional.*—Commissioners of the Supreme Court are unknown to the Constitution, and the Legislature can not create such offices and invest the officers with judicial powers.

SAME.—*Legislature can not Confer Judicial Powers.*—No body not provided for by the Constitution can exercise any part of the judicial power of the State. The Legislature has no judicial power and can confer none.

SAME.—*Duties of Supreme Court.*—*Can not be Delegated.*—Under the Constitution (section 5, article 7), the Supreme Court must decide for itself all questions of law and fact, and none of its judicial duties can be delegated to any other body or performed by deputies.

SAME.—*Judicial Deputy.*—There is no such thing in jurisprudence as a deputy judge.

*L. T. Michener,* Attorney General, *A. C. Harris, W. H. Calkins, F. Winter* and *J. H. Gillett,* for relator.

*W. P. Fishback, W. E. Niblack, J. R. Coffroth, J. D. New, R. Lowry* and *M. Nye,* for respondents.

ELLIOTT, C. J.—This action brings before us for judg-

ment the constitutionality of the act of the General Assembly, entitled "An act providing for the appointment of commissioners of the Supreme Court, and concerning matters connected therewith, and declaring an emergency." Acts of 1889, p. 41. The first section of the act assumes to create the offices of commissioners of the Supreme Court, and to provide for the appointment of persons to fill them by the General Assembly. One clause of this section reads thus: " It shall be the duty of such commissioners, under such rules and regulations as the Supreme Court shall adopt, to aid and assist that court in the performance of its duties." Another clause declares that the " commissioners shall respectively hold their offices for the term of four years, and until their successors are elected and qualified." It is also provided in this section that " If a vacancy shall occur in any one of said commissionerships hereby provided for, during a recess of the General Assembly, the Governor shall appoint some properly qualified person to fill said office until the next session of the General Assembly." It is also provided in the first section that " they shall each receive a salary equal to that of a Judge of the Supreme Court." The second section enacts that " The duties to be done and the work to be performed by such commissioners shall be such as the Supreme Court shall assign or appoint, but in no event shall such duties and work be in any way binding or conclusive upon the said Supreme Court." Section three directs that rooms and stationery shall be provided for the commissioners. The fourth section requires the librarian to furnish them with " such books as may be required for their convenient and ready reference." Section five reads thus : " Such commissioners shall be authorized to appoint a messenger at a salary of six hundred dollars per year, and such other assistants as they may deem necessary for the convenient and expeditious performance of their duties." Section six makes an appropriation " to meet the payments required by the provisions of this act."

The State, *ex rel.* Hovey, *v.* Noble *et al.*

Section 1 of article 7 of the Constitution vests the judicial power of the commonwealth in the courts. It ordains that " The judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may establish." The effect of this provision is to vest in the courts the whole element of sovereignty known as the judicial, established by the Constitution and the laws enacted under it, except in a few instances, where powers of a judicial nature are expressly and specifically lodged elsewhere. *Kilbourn* v. *Thompson*, 103 U. S. 168 ; *People* v. *Keeler*, 99 N. Y. 463 (52 Am. Rep. 49). One element only of the three which compose our governmental system is vested in the courts, but to no other department is more than one element given. Each of the three departments has all there is of the element assigned it, but it has nothing more. Each department has, it is true, incidental rights of a nature intrinsically different from the body of the power distributed to it, but these incidental rights are such only as are necessary to enable it to perform its functions as an independent branch of the government, and are, in fact, part of the principal power itself. Of the element of sovereignty, which is exclusively and intrinsically judicial, the people gave the courts all they had to give.

The domain of the judiciary is not so extensive as that of the other departments, but no other power can enter that domain without a violation of the Constitution, for within it the power of the judiciary is dominant and exclusive. The element of governmental power given to the judiciary is almost unfettered. Of all the enumerated departments of government—and ours is from the foundation upward a government of enumerated and distributed departments—the judicial is the least trammelled by constitutional limitations. Less extensive than others, it is freer from restraints. Few limitations circumscribe its powers and fewer restrictions trammel its functions. It is true that the judicial department is not absolutely supreme ; outside of its sphere it

is, indeed, without power, but no one of the departments is supreme in the strict sense, for the supreme power is in the people. No one department has, or can have, until the people shall change their organic law, all the powers of government, for those powers are carefully divided and clearly distributed. To affirm the contrary is to assert that all of section 7 is a collection of meaningless words, and every word of article 3 without meaning. But written constitutions are the product of deliberate thought. Words are hammered and crystallized into strength, and if ever there is power in words, it is in the words of a written constitution. Behind the words is the power of a free people operating through the medium of a constitutional convention, called together for the purpose of framing a fundamental and inviolable system of government. Of all governmental instruments it is the most solemn and powerful. Its grants are unalterable, its delegations of power unchangeable and its commands supreme. Until the people themselves shall change or annul their constitution, all must obey its mandates. "All power," says the first section of our Bill of Rights, " is inherent in the people." Our Constitution, therefore, is one in which " the people are recognized as the fountain of all law and authority, and a large proportion of the citizens, determined by the sovereign body, exercise the powers of government by representation." Jameson Const. Conv., section 70. In the legislative department the sovereign body is represented by the General Assembly, in the executive department it is represented by executive and administrative officers, and in the judicial department it is represented by the courts. " The powers of the government," ordains our Constitution, " are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution

expressly provided." *Const.*, art. 3. The words employed are clear and strong. There is more than a mere theoretical separation, or else words are powerless and constitutions mere empty fulminations. The provisions of the Constitution we have quoted, taken in connection with those which prescribe, define and limit the powers of the other departments of government, remove all doubt and make it incontrovertibly plain that the courts possess the entire body of the intrinsic judicial power of the State, and that the other departments are prohibited from assuming to exercise any part of that judicial power.

The authorities sustain our conclusion, for there is neither conflict nor clash of opinion, nor is there even diversity. The difficulty is not to find authority, but to select cases which best express the universal doctrine that all judicial power is exclusively in the courts, and that the departments of government are absolutely separate and distinct. Said the Supreme Court of Nebraska : " The powers of the State government are divided into three distinct departments—the legislative, executive and judicial, and no person or collection of persons, being one of these departments, can exercise any power properly belonging to either of the others, except expressly so authorized by the Constitution. Under this division of distinct departments of the government, the apportionment of power to one department will of itself imply an inhibition of its exercise by the others." *Turner* v. *Althaus*, 6 Neb. 54. One of the greatest of American judges, GIBSON, C. J., said : " But the judicial power of the commonwealth is its whole judicial power; and it is so distributed, that the Legislature can not exercise any part of it." *Greenough* v. *Greenough*, 11 Pa. St. 489. " Does any one suppose," says the Supreme Court of Illinois, " that this State can rightfully confer judicial power on any other courts than those provided for and created under our fundamental law ? " At another place in the same opinion it is said, in speaking of a section of the Constitution of Illinois : " This section has exhausted

the judicial power of the people of the State. It is there fully disposed of, leaving no residuum." *Missouri River Tel. Co.* v. *National Bank*, 74 Ill. 217. " If there is any one proposition immutably established," said SAWYER, J., " I had supposed it to be, that the judiciary department is absolutely independent of the other departments of the government." *In re Pacific R. W. Com.*, 32 Fed. Rep. 241, 267. In speaking of constitutional courts, the Supreme Court of Alabama said: " These judicial tribunals are established by the Constitution, owe their existence to that instrument alone, and are in no wise dependent upon the act of the General Assembly." It was also said in the same case, in speaking of the courts, that " Some are established by the Constitution itself—that is, by the people. They do not depend on legislative enactment for existence. They are created at the same time and in the same way with the Legislature itself. They are of the same grade in the sovereign power. They are a constituent branch of the government itself. The government under the Constitution is not complete without them." *Perkins* v. *Corbin*, 45 Ala. 103.

This court has ever been consistent and firm in maintaining the independence of the judiciary, and in enforcing the provisions of the Constitution which distribute the governmental powers. In *Wright* v. *Defrees*, 8 Ind. 298, it was said : " The powers of the three departments are not merely equal—they are exclusive, in respect to the duties assigned to each. They are absolutely independent of each other." The court said, in the case of *Lafayette, etc., R. R. Co.* v. *Geiger*, 34 Ind. 185, 197, that " These departments of government are equal, co-ordinate, and independent." This doctrine has been asserted and enforced again and again. *Kuntz* v. *Sumption*, 117 Ind. 1 ; *Smythe* v. *Boswell*, 117 Ind. 365, and cases cited ; *Ex Parte Griffiths*, ante, p. 83, and cases cited ; *Smith* v. *Myers*, 109 Ind. 1. This court has not only maintained the independence of the judiciary, but it has with equal firmness and consistency asserted the

independence of the other departments.    In *Butler* v. *State,.* 97 Ind. 373, we held that the courts could not suspend a sentence, because the power to grant pardons and respites was vested in the executive, and in cases much too numerous for citation it has been held that the court will neither perform a legislative act nor assume to interfere with matters of governmental policy or expediency. But it is not the courts alone that assert these doctrines; they are found in the works of every philosophical writer on government.    Lieber Civil. Liberty, 154 ; Montesquieu Spirit of Laws, 33 ; Ingersoll Fears for Democracy, 23 ; Wilson Congressional Govern-- ment, 12, 36 ; 1 Bryce Am. Com. 31 ; 3 Burke Works, 110.

We have, perhaps, devoted more time than is necessary to · discussing and illustrating the proposition that the judiciary is an independent department of the government, and that the whole judicial power of the State is exclusively vested in the courts, since the proposition is one that neither lawyer nor publicist will challenge ; but the importance of the proposition supplies an apology, if, indeed, apology be needed. The principle embodied in our proposition controls many phases of the case. Among other conclusions to which it leads is this central and ruling one : Neither the executive nor the legislative can select persons to assist the courts in the performance of their judicial duties.    Grant—and this. can not be granted save for mere argument's sake—that it is true that the act before us contemplates that the commissioners shall be mere assistants of the court, occupying, as is so earnestly and at so much length insisted, positions analogous to those of master commissioners or masters in chancery, and it must follow that such assistants shall be selected by the court, and that neither the Governor nor the Legislature can choose them for the court.    From this conclusion there is no escape save by a denial of the independence of the judiciary and an overthrow of the fundamental principle that the whole judicial power of the commonwealth is in the courts.

A department without the power to select those to whom it must entrust part of its essential duties can not be independent. If it must accept as " ministers and assistants," as Lord Bacon calls them, persons selected for them by another department, then it is dependent on the department which makes the selection. To be independent the power of the judiciary must be exclusive, and exclusive it can not be if the Legislature may deprive it of the right to choose those with whom it shall share its labors or its confidences. If one kingdom possesses the right to send into another ministers and assistants to share with the governing power its functions and duties, the latter kingdom is in no sense independent.

If it be conceded that the right to make choice of ministers and assistants for the court is a legislative power, then neither the judiciary nor the executive can limit its exercise, nor impose restraints upon the legislative discretion. Do but grant the existence of the power, then the extent and the mode of its exercise are, and must necessarily be, entirely matters for legislative determination. If this be so, then the Legislature may select any number of assistants, assign to them whatsoever duties they may see fit, give them access to the records of the court and surrender to them the right to share with it all labors and all duties. Surely, a court thus subject to legislative rule would be a mere dependent, without a right to control its own business and records. But a constitutional court is not subject to any such legislative control. The Legislature can not for any purpose cross the line which separates the departments and secures the independence of the judiciary. It is not the length of the step inside the sphere of the judiciary that summons the courts to assert their constitutional right and demands of them the performance of their sworn duty, for the slightest encroachment is a wrong to be at once condemned and resisted. As Daniel Webster said, and Mr. Calhoun substantially repeats, the " encroachment must be resisted at the first steps." A

thoughtful English writer, who has studied our governmental treatises and judicial decisions with great care, and who has calmly surveyed the subject from the point of view of a disinterested and impartial observer, says, in speaking of our State constitutions, that: "But in America, a Legislature is a Legislature and nothing more. The same instrument which creates it creates also the executive, Governor and the judges. They hold by a title as good as its own. If the Legislature should pass a law depriving the Governor of an executive function conferred by the Constitution, that law would be void. If the Legislature attempted to interfere with the jurisdiction of the courts, their action would be even more palpably illegal and ineffectual." 1 Bryce Am. Com. 429.

The principle that it is the right of the courts to select their own assistants was held to extend to the appointments of janitors by the Supreme Court of Wisconsin. *In re Janitor*, 35 Wis. 410. The Supreme Court of Missouri has held that the exclusive power of the legislative courts does not go to that extent, but it does not deny the general right of the courts to select those who share its duties as ministers and assistants. *State* v. *Smith*, 82 Mo. 51. The Court of Appeals, in a strongly reasoned case, declared a different doctrine, holding that the court had a right to select its janitor, and that court supported its decision by authority and by weighty arguments. *State* v. *Smith*, 15 Mo. App. 412. But, conceding the soundness of the decision in *State* v. *Smith*, *supra*, it must still be affirmed that it is not applicable here, for that decision proceeds entirely upon the ground that the criminal court (the court which asserted the right to appoint a janitor) was a statutory tribunal and not a constitutional court. The decision in *Commissioners* v. *Hall*, 7 Watts, 290, in principle strongly supports the judgment of the Court of Appeals, as does the decision in *State* v. *Smith*, 5 Mo. App. 427. But the case before us does not require us to do more than affirm, that where assistants are necessary to enable judges to discharge their duties as judges, the court must

choose those assistants. Since the time of Queen Elizabeth courts have appointed masters in chancery, and masters in chancery and master commissioners now are, and have always been, appointed by the Federal courts. Our own law has from the earliest years of the State recognized, as it does still, the right of the judiciary to select masters in chancery and master commissioners. The acts of 1881 and 1883, under which commissioners for this court were appointed, expressly recognized this right as one vested in the courts. If practical exposition of a Constitution is ever of force—and no one will deny its force—it is here of controlling effect, for the practice has been uniform and unbroken for centuries before the adoption of the Constitution, and for all the years that have followed its adoption courts have possessed and exercised, as part of the judicial power, the right to select assistants.

Proceeding still further upon the concession which we have provisionally made—and made simply for argument's sake—we affirm that the power to appoint the " ministers and assistants" of the judges is a judicial power, and was a judicial power when the Constitution was adopted. We assert, as a conclusion necessarily following from the proposition we have affirmed, that when the framers of the Constitution declared that the judicial power was vested in the courts, they invested this power in the judiciary as it then existed, and that this investment conferred upon the courts the exclusive power to choose their own ministers and assistants. We suppose no one will deny that the courts, from the earliest ages of the law, have possessed the power to appoint referees, receivers, commissioners, and all other like ministers or assistants, and that they possessed this power because it was a judicial power. If it was not a judicial power it could not have resided in the courts, for courts have no other power.

It is a mistake to suppose that a court possesses merely the power to hear and decide causes. The power is much more extensive. Bouvier thus defines judicial power: "Belonging

to or emanating from a judge as such ; the authority vested in a judge." Webster's definition of the word judicial is this: " Pèrtaining to courts of justice, as judicial power," and, " proceeding from a court of justice, as a judicial determination." Speaking of these definitions, the Court of Appeals of New York said : " Whatever emanates from a judge as such, or proceeds from courts of justice, is, according to these authorities, judicial." *In the Matter of Cooper,* 22 N. Y. 67, 82. In the case of *Striker* v. *Kelly,* 2 Denio, 323, it was said, in answer to an objection that courts could not exercise the power of appointing commissioners: " It might be objected with equal plausibility that the appointment of referees was an executive and not a judicial act." " The principle to be deduced from these extracts," says the Court of Appeals of New York, " obviously is, that where any power is conferred upon a court of justice, to be exercised by it as a court, in the manner and with the formalities used in its ordinary proceedings, the action of such court is to be regarded as judicial, irrespective of the original nature of the power." At another place in the same opinion it is said : "Attorneys and counsellors are not only officers of the court, but officers whose duties relate almost exclusively to proceedings of a judicial nature. And hence their appointment may with propriety be entrusted to the courts, and the latter in performing this duty may very justly be considered as engaged in the exercise of their appropriate judicial functions." *In the Matter of Cooper, supra.* It is, however, unnecessary to multiply authorities, for it can not be doubted that judicial power includes the authority to select persons whose services may be required in judicial proceedings, or who may be required to act as the assistants of the judges in the performance of their judicial functions, whether they be referees, receivers, attorneys, masters, or commissioners.

In employing the term " the judicial power," the Constitution refers to the power as it then existed. Constitutions do not create institutions, but are formed by organized society,

and refer to the existing condition of affairs. Cooley Const. Lim. (5th ed.) 47; *Durham* v. *State, ex rel.*, 117 Ind. 477. A constitution, says Judge Cooley, "assumes the existence of a well-understood system which is still to remain in force and be administered." Cooley Const. Lim. (5th ed.) 73. Our Constitution, therefore, assumes that "a judicial power" was already in existence, and refers to the power as it then existed. It means the power which the people understood to be vested in judges, for no other power is judicial. As the judicial power embraced the authority to select "ministers and assistants" at the time the Constitution was adopted, that right was sanctioned and confirmed, for it was the power then existing that was so carefully and fully vested in the courts. It was, as we have shown, a well known and fully recognized principle that courts should, as part of the judicial power, have the right to choose their own assistants, and the Constitution has secured and confirmed that principle beyond the power of the Legislature to shake it. As Webster says: "Written Constitutions sanctify and confirm great principles, but the latter are prior in existence to the former."

Counsel for the defendants refer us to the case of *Taylor* v. *Com.*, 3 J. J. Marsh. 401, where it is held that the appointment to office is intrinsically an executive function. Other courts have asserted a like doctrine. Thus, it was said in *State* v. *Barbour*, 53 Conn. 76, that "Appointments to office, by whomsoever made, are intrinsically executive acts." But if we were to accept this doctrine as correct, and give it full application, then it would completely destroy the claim of the defendants, for if the right to appoint can never be anything else than an executive act, the attempt of the Legislature to appoint the claimants was utterly abortive. But we do not understand the authorities to assert that the selection of officers is always an executive act; on the contrary, the authorities hold that, while the power is intrinsically executive, it may be exercised by a court or by a legislative body, as an incidental power of an independent

department of the government. No one would, we confi-
dently assume, be so bold as to assert that the Legislature
may not appoint officers connected with its duties and pro-
ceedings, and there is no more reason for denying the power
to the courts than there is of denying it to the Legislature.
The truth is, that all independent departments have some ap-
pointing power, as an incident of the principal power, for
without it no department can be independent. *State* v. *Bar-
bour, supra; Achley's Case,* 4 Abbott Pr. Rep. 35. We are
not here dealing with the general power to appoint, but we
are dealing with a single phase of the general question, and
we do no more than affirm that each department must have,
and does have, some appointing power, and that where an
appointment is essential to the proper exercise of a judicial
duty, the court concerned has authority to make the appoint-
ment. If this be not true, then no court can appoint a guar-
dian, an administrator, a receiver, a referee, an appraiser or
a commissioner. It is, in truth, impossible to conceive of
the existence of an independent judicial department without
the power to make some appointments. The denial of this
incidental power is the annihilation of judicial independence.

Thus far we have proceeded upon the theory, and it is the
one most earnestly pressed by counsel, that the commission-
ers are mere assistants of the court, and we have shown that,
even on that theory, which, for argument's sake, we provi-
sionally conceded to be correct, the act is clearly and undoubt-
edly unconstitutional. We now deny the validity of the
theory and assert that the defendants have built upon an as-
sumption that can not be sustained.

The assumption that the Supreme Court can perform its
judicial duties through the medium of masters in chancery
or master commissioners, or persons charged with duties like
those performed by masters in chancery and master commis-
sioners, is without foundation. If it can not thus perform
judicial duties it can perform none, for its duty and its
power are exclusively judicial. The Supreme Court must

decide for itself all questions of law and of fact.   The facts
must be gathered from the record by the court itself, and can
not be obtained from any other source or by any other per-
sons than the judges.   It is a court of errors, an appellate
tribunal, charged with the duty of deciding cases upon the
record, and this duty can not be performed by deputies.   In-
dependently of any constitutional provision this would be
so, because judicial powers can not be delegated.   This prin-
ciple has been established for ages.   Chancellor Kent thus
states this familiar rule :   " The general rule is, that judicial
offices must be exercised in person, and that a judge can not
delegate his authority to another.   I do not know of any
exception to this rule with us."   3 Kent Com. (12th ed.) 457 ;
Broom Legal Maxims, 841 ; *Campbell* v. *Board, etc., ante,*
p. 119 ; *Hards* v. *Burton,* 79 Ill. 504.   Those who are
chosen by the people to sit as judges must themselves dis-
charge all the judicial duties of their offices.   The trust is
imposed upon them, and they can not share their judicial
duties with any person.   The people have a right to the
judgment of those whom they have made judges, and this
right the judges can not surrender, if they would, without
a flagrant breach of a sworn duty.   The trust is a personal
one, inalienably invested in the persons selected by the peo-
ple, and it can not be delegated by the judges themselves nor
by any one else for them.   " It is only the appointed judge,"
says Chief Justice RYAN, " who can speak the authoritative
word of the law."   *Van Slyke* v. *Trempealeau, etc.,* 39 Wis.
390.   But centuries before, and at a time when the king was
the fountain of judicial power theoretically and sat in the
courts of law and equity, Sir Edward Coke even more em-
phatically stated the rule.   Said that " gladsome light " of
jurisprudence, " the judicature only belongeth to the judges."
4 Inst. 73.   Matthew Bacon said :  " The king himself, though
he be entrusted with the whole executive power of the law,
can not sit in judgment in any court, but his justice, and the
laws, must be administered according to the power commit-

ted to and distributed among his several courts of justice."
2 Bacon Abridg. 619. Again we quote from this high authority, who, speaking of the judges, says: "They can not act by deputy, nor any way transfer their power to another."
2 Bacon Abridg. 620.

The theory of our governmental system, as embodied in our Constitution, requires that the persons to whom the people have entrusted the judicial power shall themselves exercise it, and not entrust its exercise to others. Our Constitution expressly so ordains. Its words are these: "The Supreme Court shall, upon the decision of every case give a statement in writing of each question arising in the record of such case and the decision of the court thereon." Const., art. 7, sec. 5. The decision must be that of the court, and so must be the statement upon each question " and the decision thereon." The power of deciding, the duty of deciding, and the duty of writing the opinions, are specifically imposed upon the court. A duty imposed upon a department of government must be performed by the chosen officers of that department, and it can neither be delegated nor surrendered. Cooley Const. Lim. (5th ed.) 116, 139. Where a specific duty is imposed upon a tribunal, by that tribunal it must be performed, without calling any one to perform it or assist in its performance. *Conroe* v. *Bull*, 7 Wis. 354; *Kearns* v. *Thomas*, 37 Wis. 118; *Attorney General* v. *McDonald*, 3 Wis. 703.

We know judicially that our Constitution was so amended as to invest the Legislature with power to create courts superior to the circuit courts, and that this was done for the purpose of enabling litigants to have appeals disposed of by a constitutional tribunal. It can not be unknown to any one that all the departments of the government believed that the only method of administering the laws was by courts created under the provisions of the Constitution, and this belief the people confirmed by their votes in favor of the constitutional amendment. This supplies strong reasons for holding, as we do, that no body not provided for by the Con-

stitution can exercise any part of the judicial power of the State.

In the last of the many briefs submitted in behalf of the defendants, it is said, that " Counsel fell into error—doubtless by inadvertence—in assuming that either the writer, or any of his associates, intimated anywhere in any of their briefs, that the Legislature may have contemplated the performance by them, or that they might be assigned by the court to the performance, of any other duties than such as are similar to those which were performed by the members of the former commissioners of this court." Without stopping to quote from the briefs the portions (and many pages are devoted to establishing the proposition) which assert that the commissioners are to be assistants of the court, with powers analogous to those of master commissioners, we declare that, whatever view be taken, the act is utterly void, for it is, as we have shown, not within the power of the Legislature to select assistants to share with the court its duties and functions, nor is it within the power of the Legislature to delegate the duty of deciding cases or of giving decisions expression in writing to officers or tribunals unknown to the Constitution.

It is apparent from what we have said that it is exceedingly difficult to give the act a definite and intelligent construction. None has been given it, and none can be given it that will sustain its validity. But this much is clear, it assumes to create offices, to provide for the appointment of officers, and assumes to give to each of the officers a compensation equal to that of a judge of the highest court in the State. One of the sections—the fifth—assumes, indeed, to constitute the persons chosen an independent body, and to invest them with powers greater than those conferred upon the Supreme Court. The ultimate fact is, that the act assumes to create offices and invest the officers with judicial powers. The attempt, to vary somewhat our statement, although veiled and somewhat obscure, is to create a body with judicial power, and to invest officers with judicial rights and functions. The

tribunal and the officers are unknown to the Constitution. The attempt is unavailing, for it has been steadily held that, as said by Howk, J., in *Vandercook* v. *Williams*, 106 Ind. 345, "Judicial officers only can exercise judicial powers or functions." Or, as said in other cases, "The judicial functions meant by the Constitution are such only as courts and judges exercise. A judicial duty within the meaning of the Constitution is such a duty as legitimately pertains to an officer in the department designated by the Constitution as judicial. By this designation is meant the judiciary in the true sense of the term." *Wilkins* v. *State*, 113 Ind. 514; *Smythe* v. *Boswell*, 117 Ind. 365, and cases cited; *Campbell* v. *Board*, etc., *supra*, and cases cited; *Wight* v. *Wallbaum*, 39 Ill. 555. Our Constitution vests the judicial power of the State not in officers, but in courts. In speaking of the constitutional provision, in *Waldo* v. *Wallace*, 12 Ind. 569, the court said: "It will be observed that the judicial power is vested in courts, not in officers." It is clear that the common law so vested it, and that the Constitution there continues it. Cooley Const. Lim. (4th ed.) 74. If the duties assumed to be assigned the commissioners are judicial, then they must constitute a court, since only courts can exercise judicial power; but, as no such court is recognized by the Constitution, it can have no legal existence. If, however, it be conceded that the tribunal which the act assumes to establish is a court, then the instant the act took effect the offices of the judges of that court were vacant. *Rice* v. *State*, 7 Ind. 332; *Driskill* v. *State*, 7 Ind. 338; *Stocking* v. *State*, 7 Ind. 326; *State* v. *Irwin*, 5 Nev. 111. If the act does establish a court, then its members are judges, and if judges, they must be appointed by the Governor, and by no other power, for, as decided in the cases cited, the clause of section 18 of article 5 of the Constitution, which reads thus, "Or when, at any time, a vacancy shall have occurred in any other State office, or in the office of a judge of any court, the Governor shall fill such vacancy by appointment," vests the appointing power

in the Governor. In two methods, and two only, can judges be chosen—by the people and by the chief executive, and by the latter only where there is a vacancy. If the commissioners are judges, they have no title; if they are not judges, they can exercise no judicial powers or functions. But the act does not establish a court nor create judges; it is simply an attempt to appoint deputy judges, and a deputy judge is a thing unheard of in jurisprudence, and unknown to the Constitution. A plan similar to the one which the act before us professes to outline was recently proposed to the bar of New York, and it was condemned as unconstitutional. The opinion of Mr. Moak, one of the leaders of the bar of the State, that "New officers not authorized" by the Constitution "can not be created," was accepted and adopted. In an editorial comment upon this proposed plan it was said: "All hands conceded it to be unconstitutional when they came to think of it." 39 Alb. L. J. 257, 242.

The Constitution vests the judicial power in every instance, and the Legislature in none. The Legislature has no judicial power, and can confer none upon any person or tribunal. Under the Constitution it may establish courts, but it does not invest the courts with judicial power; the Constitution alone can do that, for all judicial power comes from that instrument and is vested by it in courts and judges. Speaking of the mayor of a city, the Supreme Court of Illinois said: " Unless he was such a judge, or a justice of the peace, no law could vest him with judicial powers, for in those officers alone is the entire judicial power of the State vested by the Constitution. As mayor alone, the law would be as incompetent to vest him with judicial power, as it would the Governor or speaker of the house of representatives. The Constitution itself has disposed of the entire judicial power of the State, and has exhausted that subject. The Legislature may multiply some of the officers who are by the Constitution vested with judicial powers, but when this is done, it is the Constitution which vests the power." *Peo-*

*ple* v. *Maynard,* 14 Ill. 419. It is the Constitution, and not, the Legislature, which makes the investiture, and it is the courts and judges who are invested with the judicial power. *Shoultz* v. *McPheeters,* 79 Ind. 373; *Gregory* v. *State, ex rel.,* 94 Ind. 384 (48 Am. Rep. 162); *Little* v. *State,* 90 Ind. 338; *Pressley* v. *Lamb,* 105 Ind. 171, and authorities cited, pp. 185, 186; *Kuntz* v. *Sumption, supra; Smythe* v. *Boswell, supra; Campbell* v. *Board,* etc., *supra; Hall* v. *Marks,* 34 Ill. 358; *Ex Parte Griffiths, supra.* As the Constitution, of its own vigor, and as the sole source of the judicial power, vests that power in designated tribunals, the Legislature can neither vest it elsewhere nor create new judicial offices, nor divide the duties of the judicial offices designated by the Constitution. In *People* v. *Bolton,* 55 N. Y. 50, the principle stated by us was thus expressed : " The Constitution can not be evaded by a change in the name of an office, nor can an office be divided and the duties assigned to two or more officers under different names, and the appointment to the offices made in any manner except as authorized by the Constitution." In many other cases this doctrine has been asserted. *Warner* v. *People,* 2 Denio, 272; *People* v. *Draper,* 15 N. Y. 532; *People* v. *Keeler,* 29 Hun, 175; *State* v. *Brunst,* 26 Wis. 412; *King* v. *Hunter,* 65 N. C. 603 (6 Am. Rep. 754). Our Constitution vests the highest appellate jurisdiction of the State in a Supreme Court, and provides that the number of judges shall not be more than five; there can, therefore, be no other Supreme Court than the one established by the Constitution, and it must be composed of five judges and no more. There is, consequently, no such officer under the Constitution as a Supreme Court Commissioner, and there can be no division of the duties of the Supreme Court, and a distribution to any person other than the judges of that court, chosen as the Constitution provides.

The people have a right to the courts established by and under the Constitution, and this constitutional right the Leg-

islature can neither alter nor abridge. Constitutional tribunals can not be changed by legislation, and the Supreme Court is a constitutional court. It can be composed of judges only, for only judges can constitute a court. No part of the judicial duties of that court can be assigned to any other person than one of the duly chosen judges. The Legislature has no power to change its organization, nor can that body, under the guise of creating commissioners, divide the duties of the judges, nor authorize it to be done. Under our Constitution, as amended, the Legislature may establish courts, but it can not destroy the constitutional courts—the circuit courts and the Supreme Court—nor can it change their organization nor redistribute their powers, for these courts owe their organization to the Constitution, and as the Constitution has ordained that they shall be organized, so they shall be. Judicial power distributed by the Constitution is beyond legislative control.

In discussing the general subject, the Court of Errors of New Jersey said, referring to constitutional provisions similar to our own, that: " In an examination of these sections the first thing which attracts attention is this: that the instrument itself establishes certain courts. It does not leave that all-important work to other hands. An omission in this respect in the Constitution would have left the judicial system without any fixity whatever. In such a state of things, the powers, jurisdiction, and even the very existence, of the several courts would have been placed under the control of the Legislature. They could have been altered or abolished by that body at will. But the convention had no such purpose as this, and they, therefore, enumerated the superior tribunals in which was principally to reside the judicial power of the government. By that enumeration those tribunals became constitutional courts, that is, courts that could not be altered or abolished, except by an alteration of the instrument creating them. The peculiar quality

of a constitutional court, or of any other constitutional establishment, is this, that it is not susceptible of change in its fundamental principles, except in some prescribed mode. Thus, for example, the nature of this court, or the nature of the Supreme Court, can not be altered in any way but one, that is by a modification of the Constitution itself. It is presumed that no professional gentleman would, for an instant, contend that the Legislature could deprive the decrees and judgments of this court of their quality of being conclusive, or could take from the Supreme Court any of those prerogative writs by which inferior jurisdictions are superintended and regulated. The power to do this would involve the power to modify in essential particulars the constitution of these courts; a power not to be distinguished from an authority to supersede or abolish. It is entirely clear that the Legislature has not the competency to impair the essential nature or jurisdiction of any of the constitutional courts. To this extent, it seems to me, the subject is too plain for discussion." *Harris* v. *Vanderveer*, 21 N. J. Eq. 424. This doctrine finds support from many courts, but time will not allow us to quote at length from the many decisions, and we can do no more than refer to a few of them. *Hutkoff* v. *Demorest*, 103 N. Y. 377; *State* v. *Gannaway*, 16 Lea, 124; *Landers* v. *Staten Island R. R. Co.*, 53 N. Y. 450; *In Matter of Application of Senate*, 10 Minn. 78; *In Matter of Senate*, 9 Col. 623.

The question which faces us is not one of discretion, but of imperative duty. The duty of maintaining the separation of the departments of the government and the integrity and existence of the courts as established and organized by the Constitution, is one of the most important that the judiciary is required to perform. It is the duty of the courts to uphold the Constitution as it is written, and to yield no part of their right or authority. Judges are chosen for the purpose of maintaining the limitations of the Constitution, without which free government can not exist. As said by the Court

of Appeals of New York : " If this provision were intended solely for the protection of the court or its judges they might waive it; but we do not think it was so intended. It was, in our judgment, like the whole judicial system of the State, intended for the benefit of the people, and to secure to litigants a forum in which they might have their controversies adjudged. The jurisdiction which the Constitution preserves in the courts named is inalienable, and carries with it the corresponding duty on the part of those courts to exercise it, when called upon in proper form to do so." *Alexander* v. *Bennett*, 60 N. Y. 204.

It is contended with much force, and the contention is well supported by authority, that the General Assembly can not delegate any of its functions, that the court can take upon itself no legislative duties, and that the act does require the court to prescribe by legislation the duties of the commissioners. *Smith* v. *Strother*, 68 Cal. 194 ; *In re School Law Manual*, 63 N. H. 574 ; *Gould* v. *Raymond*, 59 N. H. 260 ; *In re Pacific R. W. Com.*, 32 Fed. Rep. 241 ; *Ex Parte Griffiths, supra ; Smith* v. *Rines*, 2 Sumn. 338 ; *Doe* v. *Considine*, 6 Wall. 458; Cooley Principles of Const. Law, 53 ; Cooley Const. Lim. 139, 148 ; Endlich Interp. Statutes, section 22. This question we do not deem it necessary to decide. It is clear to us that there is and can be no such offices as the Legislature has assumed to create, and that the act is in all its parts utterly void.

The writ of prohibition prayed for will issue, and judgment will be entered in the relator's favor.

Filed April 20, 1889.