THE PEOPLE OF THE STATE OF ILLINOIS, on the relation of the City of Rockford, Plaintiffs in Error, *v.* HIRAM R. MAYNARD, Mayor of the City of Rockford, Defendant in Error.

### PETITION FOR MANDAMUS.

That provision of the general law passed in 1849, authorizing towns having a population of fifteen hundred souls, to organize by adopting the charters passed for Springfield and Quincy, giving to the mayors of such towns the same judicial powers vested in justices of the peace, was abrogated by the new constitution.

Mayors elected but for one year cannot exercise the judicial powers of justices of the peace.

THIS was a petition filed in this court, setting forth that the city of Rockford was regularly incorporated under the fifth and sixth sections of an act of the general assembly, entitled " An Act to incorporate towns and cities," approved February 10th,

A. D. 1849, and that the first election under the said city organization was held on the third Monday of April, A. D. 1852; that the mayor and aldermen took the oaths of office and entered upon their duties; that an ordinance was passed by the city council requiring all male inhabitants of said city, over the age of twenty-one years, to labor on the streets and alleys in said city, three days in each year, and upon failure to perform such labor after due notice, or to commute for the same to the street commissioner in compliance with said ordinance, to forfeit and pay for each day they neglected to perform such labor or commute as aforesaid, the sum of one dollar per day; that at a second election for mayor of said city, in April, 1853, Hiram R. Maynard was elected mayor; that he was commissioned by the governor as a justice of the peace for the city of Rockford and county of Winnebago, for one year from the date of his election, in accordance with section seven, article six, of the said act to incorporate the city of Springfield; that he took the oaths of office and entered upon the duties of the same; that one H. Brownell, an inhabitant of said city, and liable to perform road labor in said city, having refused to perform such labor, that he was summoned before said mayor to answer in debt for the penalty prescribed by the ordinance; that judgment was rendered against Brownell for penalty and costs; that Maynard afterwards refused to issue an execution on said judgment, assigning as a reason, should he do so, that he would be likely to involve himself in litigation, and that he doubted his power to do so.

Wherefore, a writ of mandamus was prayed for, commanding Maynard, as such mayor as aforesaid, to issue an execution upon the judgment against Brownell.

Maynard appeared and admitted the facts set forth in the petition, and submitted himself to the order of the court in the premises.

L. F. WARNER and R. S. BLACKWELL, for petitioners.

J. L. LOOP and F. BURNAP, for respondent.

CATON, J. It is not without regret that we feel constrained to concur with the mayor of Rockford in the conclusion that the law which confers upon him judicial powers is in conflict with the first and twenty-seventh sections of the fifth article of our constitution. That first section is as follows : " The judicial power of this State shall be, and is hereby vested in one supreme court, in circuit courts, in county courts, and in justices

of the peace; provided, that inferior local courts of civil and criminal jurisdiction may be established by the general assembly in the cities of this State, but such courts shall have a uniform organization in such cities." The twenty-seventh section provides for the election of justices of the peace, and declares, that they " shall hold their offices for four years, and until their successors shall have been elected and qualified."

Previous to the adoption of this constitution, the cities of Springfield and Quincy were incorporated, and their charters provided that their mayors should be elected for one year, and should be commissioned as justices of the peace, and should have exclusive jurisdiction in all cases arising under the ordinances of their respective cities. Subsequently, in 1849, a general law was passed, authorizing towns having a population of fifteen hundred or more to organize as cities by the adoption of those charters. Under this general law the city of Rockford became a city, of which the defendant was elected mayor, and in pursuance of the charter was commissioned as a justice of the peace for one year. This was done since the adoption of the new constitution. We can arrive at no other conclusion than that the provisions of those city charters, which authorized the mayors to be commissioned as justices of the peace, and vested them with judicial powers, were abrogated by the new constitution, because they are inconsistent with it. They cannot be justices of the peace, because they cannot hold the office for the prescribed time. They are elected for but one year, and are by the law only authorized to be commissioned for that time, whereas the constitution declares that justices of the peace shall be elected for four years, and for that period must they qualify. The defendant was not, and could not, by the city charter, be elected for the required period of time. When the new constitution took effect, any provision of a former law which was inconsistent with it, became as much unconstitutional as if the law had been subsequently passed. A law cannot be in force in the State, no matter when passed, which contravenes the provisions of the constitution of the State. No legislature would have thought of passing a law, since the adoption of this constitution, authorizing the election of justices of the peace for a shorter period than four years, or authorizing any mayor or other officer to act as justice of the peace whose term of office did not correspond with the term prescribed by the fundamental law, for the term of office of a justice of the peace. Such an attempt on the part of the legislature would be an undisguised assumption of power, which they are expressly prohibited to exercise.

Except as justice of the peace, it is very clear that the mayor could exercise no judicial power. There can be no wellgrounded pretence that he was a judge of the supreme, circuit, or county court, or that he was the judge of an inferior local court, in the city which had been established by the general assembly under the proviso to the first section quoted. Under that proviso no attempt has been made to establish a court in the city of Rockford, nor can there be any pretence that the defendant has been elected the judge of any such court or any court. Unless he was such a judge, or a justice of the peace, no law could vest him with judicial powers, for in those officers alone is the entire judicial power of the State vested by the constitution. As mayor alone, the law would be as incompetent to vest him with judicial power, as it would the governor or speaker of the house of representatives. The constitution itself has disposed of the entire judicial power of the State, and has exhausted that subject. The legislature may multiply some of the officers who are by the constitution vested with judicial powers, but when that is done, it is the constitution which vests the power. No doubt an old law may continue in force, or a new one may be passed, vesting in the mayor or other officer ministerial powers, because the constitution has not determined in whom these powers shall be vested, and hence it is left to legislative discretion, and many such powers may, undoubtedly, be properly vested in the mayors of cities. And any such powers which former laws placed in their hands it may be their duty to exercise upon all proper occasions. But the question here is, Did the mayor of Rockford possess judicial powers? Had he authority to render the judgment which we are now asked to compel him to enforce? We think not, and that he was justified in staying his hand where he did. Beyond this we decide nothing.

We are not unmindful of the embarrassments which may be occasioned in many cities of the State by this determination, that their chief officer has not the power to enforce and execute the city ordinances judicially. But it is unavoidable, for we find the law to be so.

The writ must be refused.

*Petition denied.*