# K. HOBERT HILLS

*v.*

# THE CITY OF CHICAGO.

1. DELINQUENT TAXES—*who may make the sale.* Where the city collector applied to the court for an order for the sale of real estate for the payment of delinquent city taxes and assessments in the mode pointed out by the city charter, and an order was so made by the court, such order authorizes the collector, and no one else, to make the sale, precisely as though he had been so ordered in specific language.

2. CONSTITUTION—*prohibitory clauses—their effect.* Section 4 of Article IX of the constitution requires the legislature to provide, in all cases where a sale of real estate is necessary to collect taxes and special assessments for State, county, municipal or other purposes, that a return shall be made to some general officer of the county having authority to receive State and county taxes, "and there shall be no sale of the said property for any of said taxes or assessments, but by said officer, upon the order or judgment of some court of record : " *Held*, that this provision prohibited the court from rendering a judgment for the sale of real estate for such taxes on the application of any person but the general county officer named, and that no other but him could make the sale.

3. SAME—*interpretation.* In giving an interpretation to this clause, no aid can be derived by a comparison with other clauses of that instrument, as it stands alone, disconnected from other clauses.

4. In such case the cardinal rule is, that it must be so construed as to give effect to the intent of the people in adopting it. Where the words employed, when taken in the ordinary sense and their grammatical arrangement, embody a definite meaning which involves no conflict with other parts of the same instrument, then the meaning thus apparent on the face of the instrument is the only one that can be presumed to have been intended to be conveyed, and there is no room for construction.

5. It must be presumed that the people who adopted the constitution understood the force of the language used, and that language has been employed with sufficient precision to convey the intent, and unless examination demonstrates the presumption does not hold good in the particular case, nothing will remain but to enforce it.

6. The language employed in this section is plain and unambiguous, conveys a definite meaning, and involves no absurdity, conflict or inconsistency, when compared with other parts of the instrument. In such a case, the argument drawn *ab inconvenienti* can not apply to the interpretation, but to the policy of the prohibition itself.

7. When an act is prohibited by clear and unambiguous language of the constitution, the policy of such inhibition, or the inconvenience that may ensue from its enforcement, is a matter with which the court has no concern, its duty being to faithfully enforce it.

8. The first branch of the section enjoins upon the legislature the duty of providing that a return of unpaid taxes and assessments be made to some general officer of the county having power to receive State and county taxes, it being the object to promote public convenience and economy. Had the clause gone no further, it would have been incapable of enforcement by any other department of the government, until the legislature had adopted enactments to carry its provisions into effect. The last clause was designed to produce prompt action. Its effect began with the adoption of the constitution, and annulled all laws in conflict with its provisions. When such a constitutional provision is adopted it abrogates all laws conflicting therewith. Such may not be a rule of universal application, but it does apply when a particular proceeding authorized by a former statute is prohibited by the constitution.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. HITCHCOCK, DUPREE & EVARTS, for the appellant.

Mr. M. F. TULEY, for the appellee.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

At the March term, 1871, of the Superior Court of Cook county, the collector of the city of Chicago, upon his report of special assessments, for municipal purposes, remaining unpaid, upon a certain special assessment warrant, made application to that court pursuant to the 12th section of chapter 9 of the city charter, for judgment against the several lots and parcels of land described in said warrant, according to the form of the statute in such case made and provided.

The appellant, as owner of a portion of the property described, appeared at the term stated, and, under the provisions of the 15th section of said chapter, filed objections to such judgment, of which the only material one is as follows: "This application by the city collector is in violation of the provisions of section 4, article 9 of the constitution of this State."

88      HILLS *v.* CITY OF CHICAGO.     [Sept. T.,

Opinion of the Court.

The court overruled the objections, entered judgment against each lot for the sum annexed to it, being the amount of the assessment and costs due and unpaid, and ordered such lots, or so much as should be sufficient to satisfy the amount of the assessment and costs unpaid thereon, to be sold as the law directs. From which judgment an appeal was taken to this court. The only question presented upon this appeal for decision is based upon the objection in the court below, above specifically set forth.

The judgment and order of sale appear to be in exact conformity with the form prescribed in section 16 of chapter 9, (Gary's Laws, 90). By section 17 of same chapter, it is made the duty of the clerk of such court, within twenty days after the order is granted, to make out, under the seal of said court, a copy of so much of the collector's report in such case as gives a description of the land or other property against which judgment shall have been rendered, and the amount of such judgment, together with the order of the court thereon, which shall constitute the process on which all lands, etc., shall be sold for the amount of any taxes, assessments, etc., so levied, assessed or charged upon them. This section proceeds: " The said city collector is hereby expressly authorized and empowered to make sale of such lands, lots, etc., upon ten days' notice," etc.

In the 18th section it is enacted that " the proceedings may be stopped at any time upon payment of said judgment to the collector." In the 20th, that " certificates of sale shall be made and subscribed by the collector," and that " the collector shall continue such sale from day to day, until all the lots, etc., contained *in his precept,* on which judgment remains unpaid, shall be sold or offered for sale. " (Gary's Laws, 91.)

It is obvious, from the form of the order prescribed, and the subsequent provisions of the charter referred to, that, in legal effect, it is an order for such sale to be made by the city collector, and nobody else.

For all the purposes of the question we are now consider-
ing, it is to be regarded in precisely the same light as if it
directed, in so many words, that the several lots, etc., be sold
by the collector of the city of Chicago as the law directs.

If such be the legal effect of the order of sale, and if the
4th section of article 9 of the constitution must be interpre-
ted as prohibiting such sale by the city collector because he is
not a general officer of the county having authority to receive
State and county taxes, then it must follow that the order
which purports to authorize the city collector to do what he
is thus prohibited from doing is itself prohibited, and the
court had no power to make it; for it would be a legal sole-
cism to say that although the fundamental law forbids the
doing of a particular act, yet it is not erroneous for a court
to order the same act to be done. The only question, there-
fore, which remains in this case is: Does the section of the
constitution referred to contain the prohibition supposed?
The section is as follows:

"The general assembly shall provide, in all cases where it
may be necessary to sell real estate for the non-payment of
taxes or special assessments for State, county, municipal or
other purposes, that a return of such unpaid taxes or assess-
ments shall be made to some general officer of the county
having authority to receive State and county taxes, and *there
shall be no sale of the said property for any of said taxes or
assessments but by said officer,* upon the order or judgment of
some court of record."

The duty devolved upon the court is that of giving a judi-
cial interpretation to the language here quoted. No aid in
its performance can be derived by a comparison of this with
other parts of the same instrument; for it seems to stand by
itself, wholly disconnected from other clauses; nor by recourse
to the adjudicated cases cited, because they involved the con-
struction and effect of unanalogous provisions. The process
will require the application of a few general rules and careful
attention to the words employed. The first and cardinal rule

90          HILLS *v.* CITY OF CHICAGO.          [Sept. T.,

Opinion of the Court. ·

is, that we must so construe it as to give effect to the intent
of the people in adopting it. This rule nobody will question.
But the second one we would invoke is that which will afford
us the true test by which such intent is to be ascertained. As
to that, there may be some difference of opinion; for we find
the counsel for appellant adverting to the address prepared
by a committee of the convention to the people which gave
the same construction to the clause as is here contended for
on behalf of appellants, while the counsel for appellee refers
to the debates in the convention in support of his construc-
tion. Whether, in case of a clause of doubtful import, such
reference to extrinsic matters might or might not be proper,
we will not stop to inquire; for the doctrine is firmly estab-
lished, that where the words employed, when taken in their
ordinary, natural signification, and the order of their gram-
matical arrangement given them by the framers, embody a
definite meaning which involves no conflict with other parts
of the same instrument, then that meaning which is appar-
ent upon the face of the instrument is the only one we are at
liberty to say was intended to be conveyed, and there is no
room for construction. "That which the words declare, is
the meaning of the instrument; and neither courts nor legis-
latures have a right to add to or take away from that mean-
ing." . *Newell* v. *The People,* 7 N. Y. 97; *Den* v. *Reid,* 10 Pet.
524; *Spencer* v. *State,* 5 Ind. 76; ib. 569; Bronson, J., *People*
v. *Purdy,* 2 Hill, 35.

The framers who prepared and the people who adopted the
constitution must · be presumed to have understood the force
of the language used; "and it is to be presumed that lan-
guage has been employed with sufficient precision to convey
the intent; and unless examination demonstrates that the pre-
sumption does not hold good in the particular case, nothing
will remain but to enforce it;" Cooley's Con. Lim. 55. Or,
as MARSHALL, C. J., said, in *Gibbons* v. *Ogden,* 9 Wheat. 188:
"The framers of the constitution and the people who adopted

it must be understood to have employed words in their natural sense, and to have understood what they meant."

The language employed in the section we are considering is plain and unambiguous, conveys a definite meaning, and involves no absurdity, conflict or inconsistency, when com-pared with other parts of the instrument.

The counsel for appellee questions the right of the court to read the prohibitory clause according to the natural import of the words employed, and contends that it should read thus: "That when the general assembly shall have provided for a return to a general officer of the county as directed, then and from thence no sale shall be made but by such officer," etc.

His argument in favor of the court taking such liberty with the language used, is not based upon any ambiguity apparent upon the face of the instrument, but is drawn *ab inconvenienti,* and assails the policy of the prohibition.

When a particular act is inhibited by the clear and unambiguous language of the constitution, the policy of such inhibition, or the inconvenience that may ensue its enforcement, is a matter with which the court has no concern; its duty is simply to reverently recognize and faithfully enforce.

The first branch of the section in question enjoins upon the legislature the duty of providing that a return of all unpaid taxes and assessments be made to some general officer of the county having authority to receive state and county taxes. The object of this requirement was undoubtedly the promotion of public convenience and economy.

If the clause had gone no further, then, although the duty would have been imposed upon the legislature, still it would have been incapable of enforcement by any other department of the government, and the only guaranty for its performance would have been the presumptive regard of the legislative body for the mandates of the constitution and the responsibility of that body to its constituents. Upon this guaranty alone, the people, it seems, did not see fit to rely. But as an inducement to prompt action, the prohibition of the last clause

92     HILLS *v.* CITY OF CHICAGO.     [Sept. T.,

Opinion of the Court.

·was added. Its effect began with the life of the constitution, and annulled all laws conferring power upon officers, other than the county officer described, to sell real estate ·for the non-payment of any taxes or special assessments.

If there had been prompt action by. the legislative department, as was contemplated by the constitution, very little, if any, inconvenience, it is believed, would have resulted from the change in the revenue system sought to be effected. For the want of such action or the consequences which may follow, this court is, in no respect, responsible. Suppose the legislature should now pass a law, and instead of providing for a return to be made of unpaid city taxes or assessments to some general county officer, should provide, that they be returned to the city treasurer, not being such county officer. Would the act be valid? Most clearly not. It would be in conflict with the constitution, because an attempt to perpetuate a system which the constitution intended to destroy. If· such an act would be unconstitutional, if passed *after* the adoption of the constitution, because of inconsistency with it, would not the same act be annulled by it, if in existence *at the time* of its adoption? This court has said that it would. *People* v. *Maynard,* 14 Ill. 419.

This test may not be one of universal application, but must be a correct one where a particular act or proceeding, authorized by a previous statute, is prohibited by the constitution.

This case is among the first cases, arising under the new constitution, in which we have been directly called upon to interpret or construe any of its provisions. And if we now set the pernicious example of frittering away, by subtle and artificial construction, one of its plain prohibitions, though not one of the greatest importance, of what value is the rest of it? With such license on the part of the court of last resort, of what avail, we might ask, is any constitution? If. one provision may be thus evaded or abrogated, where is the security that others may not?

Syllabus.

After a full and very careful consideration of the question involved, we are constrained to hold, that the portions of the city charter, authorizing a return of unpaid taxes and assessments to the city collector, and an order of sale of real estate to be made by him, were abrogated by the new constitution, and the court had no power to make such order of sale.

The judgment of the court below must, therefore, be reversed and the cause remanded.

*Judgment reversed.*