Johnson v. Gebhauer.

159 271
164 652

159 271
166 435
f168 447

# JOHNSON v. GEBHAUER.

[No. 19,596. Filed October 10, 1902.]

COURTS.—*Records.*—The records of a court are subject to its own control, and when jurisdiction has attached they may not be diminished or altered without the consent of the court in which the cause is pending, excepting only where such change is directed by some superior or appellate court authorized by law to make such order. *p. 274.*

SAME.— *Records.*— *Transcript.*—*Mutilation.*—*Appeal.*—Where a transcript is filed in the proper court upon appeal, and when notice is given to the appellee, if necessary, the jurisdiction of the court to which the appeal is taken is complete, and the transcript becomes a record of the court, and any addition to or diminution thereof without the leave of the court is a mutilation. *p. 275.*

CONSTITUTIONAL LAW.—*Legislature no Control Over Court Records.*—*Extending Time for Filing Bill of Exceptions.*—The act of March 11, 1901 (Acts 1901, p. 511), giving to trial courts in certain cases the power to extend the time of filing bills of exceptions, is an attempt by the legislature to exercise control over the records of the court, and is in violation of §1, article 3, of the State Constitution which provides for the exclusive character of the three departments of government. *pp. 274-278.*

SAME.—*Extending Time for Filing Bill of Exceptions.*—*Power of Legislature.*—The right of the prevailing party in the trial court to require that the bill of exceptions should be settled by the judge, and filed within the time then fixed by such judge, is a vested right, and the act of March 11, 1901, giving the trial courts in certain cases the power to extend the time of filing bills of exceptions, is unconstitutional, as impairing the obligation of contracts. *p. 275.*

APPEAL.—*Mutilation of Record.*—*Dismissal.*—The removal from the record by the appellant, of the original bill of exceptions, and the filing of a new one in accordance with the provisions of the invalid act of March 11, 1901, while a mutilation of the record, is not a sufficient cause for dismissal of the appeal where the appellant acted in good faith. *p. 279.*

TRIAL.—*Verdict.*—*Answers to Interrogatories.*—*Conflict.*—Although many answers to interrogatories propounded to the jury tend to sustain the theory of the appellant, a general verdict for appellee will not be overthrown thereby, unless there is an irreconcilable conflict between such verdict and answers. *p. 282.*

INSTRUCTIONS.—*Incomplete.*—Where an instruction is correct as far as it goes, but incomplete, it may be completed by another which supplies the defects. *pp. 283, 284.*

Johnson *v.* Gebhauer.

MASTER AND SERVANT.—*Safe Appliances.*—*Instruction.*—An instruction that "if an employe sustains injury in consequence of the failure or neglect of an employer to use reasonable care and diligence" to discharge the duty of providing safe machinery, then the employe, if injured without his fault, etc., would be entitled to recover, sufficiently charges that only reasonable care is required of an employer in providing safe machinery. *p. 284.*

INSTRUCTIONS.—*Incomplete.*—An instruction which states certain conditions under which there can be no recovery is not rendered bad because it does not state all such conditions. *p. 284.*

PLEADING.—*Complaint.*—*Allegation as to Notice.*—*Proof.*—An allegation of knowledge or notice includes not only actual but constructive notice; and proof either of actual knowledge, or that the defendant by the exercise of ordinary care, might have obtained such knowledge, is admissible under the general allegation of notice. *p. 285.*

From Hamilton Circuit Court; *J. F. Neal,* Judge.

Action by John Gebhauer against Jesse B. Johnson and another. From a judgment for plaintiff, defendant Johnson appeals. Transferred from Appellate Court, under §1337h Burns 1901. *Affirmed.*

*W. H. H. Miller, J. B. Elam, J. W. Fesler* and *S. D. Miller,* for appellant.

*I. W. Christian, W. S. Christian, W. S. Doan* and *W. J. Beckett,* for appellee.

DOWLING, C. J. — On May 11, 1900, John Gebhauer, who was the plaintiff below, recovered a judgment against the appellant Johnson for damages for a personal injury. After motions for judgment on the answers to interrogatories, and for a new trial, had been overruled, ninety days from May 11, 1900, were granted the defendant in which to prepare and file his bill of exceptions. Conformably to the provisions of the act of March 3, 1899 (Acts 1899, p. 384), a bill was filed by the stenographer who reported the evidence, and *after* such filing the bill was signed by the judge before whom the cause was tried. An appeal was taken by the defendant below, and a transcript containing the bill of exceptions so filed and signed was lodged in the Appellate Court. Afterwards, this court having decided,

in *Adams* v. *State,* 156 Ind. 596, 599, that §6 of the act of March 3, 1899, was unconstitutional, the appellant, on April 13, 1901, over the objection of the appellee, obtained an order of the Hamilton Circuit Court, where the cause had been tried, extending the time for filing the bill of exceptions in said cause until May 1, 1901. In pursuance of this order, a second bill was prepared, and, after it was signed by the judge, it was filed in the office of the clerk of the Hamilton Circuit Court April 25, 1901. By the direction of the appellant the bill originally filed and incorporated in the transcript on this appeal was detached and removed from the records of this court, to which the cause had been transferred, without its leave, and the bill filed April 25, 1901, was substituted. The proceedings of the Hamilton Circuit Court, upon the petition of the defendant below, under the act of 1901, for an extension of time to file the substituted bill of exceptions, are made a part of the record in this court.

In making the order of April 13, 1901, the Hamilton Circuit Court acted upon the authority of an act of the General Assembly of this State approved March 11, 1901 (Acts 1901, p. 511), giving to trial courts in certain cases the power to extend the time for filing bills of exceptions.

The appellee moves to strike the transcript from the files, and to dismiss this appeal, because of the unauthorized alteration of the record by the removal of the original bill of exceptions, and the substitution of the bill of April 25, 1901.

The action of the appellant, in procuring from the trial court an order extending the time for filing a bill of exceptions, and in causing such new bill to be attached to the transcript some eight months after the transcript had been filed in the Appellate Court, was taken in pursuance of said act of 1901, *supra.* That act provided that where an attempt had been made to make the evidence a part of the

record by a bill of exceptions prepared in pursuance of the act of 1899, *supra,* which had been held unconstitutional, the court or judge before which the case was determined might, upon proper application by the party desiring to appeal, by order, extend the time for tendering the bill of exceptions for a sufficient length of time to enable such party to prepare and tender such bill, which, upon being signed and filed, should become a part of the record to the same extent, and in the same manner, as if tendered and filed within the time originally fixed. The act further provided for the withdrawal from the transcript previously filed in the Supreme or Appellate Court, in any case then pending on appeal, of the longhand manuscript of the reporter, its delivery to the party prosecuting the appeal for the signature of the judge, its proper authentication, and its incorporation in the transcript as a part of the record.

Counsel for appellee contend that the act of 1901, *supra,* is unconstitutional and void. On the other hand, it is insisted, on behalf of the appellant, that the act is remedial and beneficent in its scope and purpose, and that it conflicts with no provision of the organic law of the State

The records of a court are subject to its own control, and when jurisdiction has attached they may not be diminished or altered without the consent of the court in which the cause is pending, excepting only where such change is directed by some superior or appellate court authorized by law to make such order. This freedom from interference or control by other departments of the government is essential to the independence of the judicial branch thereof. The legislature has no more authority to alter the records of a court than has a court to change the journal of legislative proceedings. Such exclusive control over its records is an important function of the judicial authority, and it can not be exercised either by the legislative or the executive department of the State. Const., Art. 3, §1.

Johnson *v.* Gebhauer.

Where a transcript is filed in the proper court upon appeal, and when notice is given to the appellee, if necessary, the jurisdiction of the court to which the appeal is taken is complete, and the transcript becomes a record of that court. Such record can not be removed, altered, or amended, without the leave of the court in which the appeal is pending, and any addition to or diminution of the record, without the leave of the court is a mere mutilation or interpolation having no legal efficacy, and affording no foundation for relief or redress to the party perpetrating it. Great as is the power of the legislature, it does not enable that department of the government to come into the courts after their records are made up, and alter, add to, or destroy them. On this ground alone, which we regard as amply sufficient, the act in question might be held unconstitutional.

But for another, and equally cogent reason, we are constrained to decide against the validity of this act. It is clearly in conflict with that provision of the State Constitution which prohibits the passage of any law impairing the obligation of contracts. Const., Art. 1, §24.

A judgment is a contract of record, and its obligation is impaired whenever the observance of those forms and rules of procedure in force when it was obtained, and by which it is protected and sustained, are annulled or set aside. In the present case the rights of the parties under the judgment were fixed by the law as it stood when the final adjournment of the Hamilton Circuit Court took place. The right to require that the bill of exceptions should be settled by the judge, signed by him, and filed in the office of the clerk of the court after such signing, within the term, or within such time beyond the term as the court, before the expiration of the term, should appoint, to make it sufficient and effective to bring the evidence into the record, was a valuable vested right of the plaintiff below. His rights in this behalf, as well as the measure of those of the defend-

ant, were established by the order of the court requiring the bill to be tendered and filed within ninety days from May 11, 1900. This right having vested, it could not be impaired or destroyed by a further order made after the term at which the judgment was rendered. If the party appealing failed to tender his bill within ninety days after May 11, 1900, his right to tender such bill was irrecoverably lost, and neither the trial court nor the legislature could restore it by depriving the other party of the legal consequences of such failure.

Mr. Justice Gray, in *Michigan Ins. Bank* v. *Eldred,* 143 U. S. 293, 298, 12 Sup. Ct. 452, 36 L. Ed. 162, states the law thus: "By the uniform course of decision, no exceptions to rulings at a trial can be considered by this court, unless they were taken at the trial, and were also embodied in a formal bill of exceptions presented to the judge at the same term, or within a further time allowed by order entered at that term, or by standing rule of court, or by consent of parties; and, save under very extraordinary circumstances, they must be allowed by the judge and filed with the clerk during the same term. After the term has expired, without the court's control over the case being reserved by standing rule or special order, and especially after a writ of error has been entered in this court, all authority of the court below to allow a bill of exceptions then first presented, or to alter or amend a bill of exceptions already allowed and filed, is at an end. *United States* v. *Breilling,* 20 How. 252; *Müller* v. *Ehlers,* 91 U. S. 249; *Jones v. Grover & Baker Co.,* 131 U. S. appx. 150; *Hunnicutt* v. *Peylon,* 102 U. S. 333; *Davis* v. *Patrick,* 122 U. S. 138 *Chateaugay Co.* v. *Petitioner,* 128 U. S. 544. The duty of seasonably drawing up and tendering a bill of exceptions stating distinctly the rulings complained of and the exceptions taken to them, belongs to the excepting party and not to the court; the trial court has only to consider whether the bill tendered by the party is in due time, in

legal form, and conformable to the truth; and the duty of the court of error is limited to determining the validity of exceptions duly tendered and allowed. *Hanna* v. *Maas,* 122 U. S. 24. Any fault or omission in framing or tendering a bill of exceptions, being the act of the party and not of the court, can not be amended at a subsequent term, as a misprision of the clerk in recording inaccurately or omitting to record an order of the court might be. *In re Wight,* 134 U. S. 136, the writ of *certiorari* prayed for must therefore be denied, and the case must be determined upon the original bill of exceptions."

Again, in *Müller* v. *Ehlers,* 91 U. S. 249, 250, the court uses this language: "Upon the adjournment for the term the parties were out of court and the litigation there was at an end. The plaintiff was discharged from further attendance; and all proceedings thereafter, in his absence and without his consent, were *coram non judice.* The order of the court, therefore, made at the next term, directing that the bill of exceptions be filed in the cause as of the date of the trial, was a nullity. For this reason, upon the case as it is presented to us, the bill of exceptions, though returned here, can not be considered as part of the record."

An order extending the time for signing a bill of exceptions is a judicial act. *Village of Marseilles* v. *Howland,* 136 Ill. 81, 84, 26 N. E. 495; 3 Ency. Pl. & Pr., 469, and cases cited. The legislature can not, directly nor indirectly, perform a judicial act. In an early case, it was said: "The circuit court did right in refusing to hear the new trial granted by the special act of the legislature. The legislature does not possess the power to grant a new trial in a suit at law. The Constitution of Indiana has always contained the following provision: 'The powers of the government of Indiana shall be divided into three distinct departments, and each of them be confided to a separate body of magistracy, to wit: those which are legislative, to one; those which are executive, to another; and those which are

judiciary, to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.' There is no section of the Constitution permitting the legislature to grant new trials. The granting of a new trial is a judicial act, and, in this State, controlled by settled rules of law. If an inferior court should, in any given case, exercise the power to grant new trials, in violation of these settled rules, this court would set aside the grant, and leave the judgment rendered unaffected. Now, the Constitution above quoted says the legislature shall not perform a judicial act. The granting of a new trial, we have seen, is a judicial act. Therefore, the legislature can not grant a new trial. And it is a power that should not be possessed by the legislature in its legislative capacity; because, in that capacity, it would not be governed by legal rules. In governments where the constitution converts the legislature, on some occasions and for some purposes, into a court, while that body is thus acting, it is governed by the same rules, and restrained in its action by the same authorities, as are courts of law. Not so where it acts simply in its legislative capacity; and to permit it to dispose of judicial questions in that capacity, would be in the highest degree dangerous to the rights of the individual members of the community." *Young* v. *State Bank,* 4 Ind. 301, 58 Am. Dec. 630.

The act of March 11, 1901, practically extended the time for tendering bills of exceptions in cases already finally disposed of in the trial courts, and which were pending in this Court and the Appellate Court on appeal. The grant of such an extension, under these circumstances, was a judicial act attempted under the form of a statute special in its nature and operation, and therefore not within the power of the legislature. For this reason, also, the act must be held unconstitutional.

Johnson *v.* Gebhauer.

The foregoing ruling takes the bill of exceptions containing the evidence out of the record; but other questions are presented by the assignment of errors which may be decided without reference to the evidence.

We are asked by the appellee to dismiss the appeal, and not to consider these questions because of the supposed mutilation of the record; but we do not feel justified in doing so. In the preparation and filing of the original bill and in the subsequent proceedings for the removal of that bill and the substitution of a new bill, the appellant had the apparent authority and sanction of two express statutes which had not then been held invalid. Under these circumstances we are not disposed to subject a party who has acted in perfect good faith, and under the advice of eminent counsel, to the penalty of a wanton and inexcusable mutilation of the record. *Montgomery* v. *Gorrell,* 49 Ind. 230. The motion to dismiss the appeal is therefore overruled.

The refusal of the court to render judgment for the appellant on the answers of the jury to certain interrogatories is one of the errors assigned, and will be first considered. The complaint stated, in substance, that the Indianapolis Excelsior Manufacturing Company was a corporation, organized under the laws of this State, and on April 21, 1898, engaged in the manufacture of excelsior, or wood hair; that Jesse B. Johnson was the manager and proprietor of said business; that the appellee was employed by the defendant on said date to operate certain machines in defendant's said factory; that it was no part of the duty of the appellee to keep the machines safe and in repair; that the machines were constructed in the manner described in the complaint for the purpose of cutting excelsior, or wood hair, and consisted, partly, of a knife moving rapidly up and down, fastened to an iron plate by set-screws; that the defendant negligently permitted the screws, nuts, and bolts which fastened the steel blade in its place to become

worn, defective, and loose, so that the motion of said machine caused said blade to become loose,—of all of which the appellee had no knowledge, but which was known to the defendants long enough before the accident to appellee to enable them to repair the same; that while the appellee was working at and using the said machine, the said blade, by reason of the loosening of the screws, nuts, etc., slipped through said plate about three inches, and, without fault or negligence on the part of the appellee, severed his hand from the arm a little below the wrist joint, etc. The answer was a denial, and the cause was submitted to a jury. Upon the trial the plaintiff below dismissed the action as to the Indianapolis Excelsior Manufacturing Company, and a verdict was returned against the defendant Johnson, with answers to interrogatories submitted by the parties. The defendant below moved for judgment in his favor on the interrogatories.

The following were some of the questions of fact with the answers to the same: "53. Was it not the duty of Frank Clark, as foreman, to keep defendants' excelsior machines in order and sharpened, and set the knives or bits? A. Yes." "59. Were not the threads in the plate of defendant's excelsior machine, into which the set-screws were fastened, worn out and smooth at the time the plaintiff was injured, and for several months prior? A. They were considerably worn." "61. Could not Frank Clark have discovered by ordinary care and observation, long before the happening of this accident, that from the condition of the threads in said plate, the said set-screws were liable to work loose at any time? A. Yes. 62. Did not the bit or knife in said excelsior machine slip out and cut off defendant's [plaintiff's] hand? A. Yes. 63. Did not said bit or knife slip out on account of the worn and defective condition of the attachments which held said knife in place? A. Yes." "66. If said bit slipped down, would it not extend out toward the plaintiff's hand while

placing wood in the ordinary manner between the rollers in said machine? A. Yes."

These answers, which are plain and bear directly upon the main issue in the case, are consistent with each other, and fully sustain the general verdict in favor of the appellee. Whether the appellee was injured by reason of a defect in the machinery; whether that defect was known to the appellant, and might have been repaired before the accident; whether the appellee had knowledge of the defect before the accident; whether he was injured without fault on his part,—were questions of fact, all of which were found by the jury in favor of the appellee.

It is insisted by counsel for the appellant that the answers of the jury to the questions of fact indicate that the appellant Johnson was merely the manager of the business of the Indianapolis Excelsior Manufacturing Company, or the owner of its stock. We fail to find anything in the answers to sustain this proposition. The complaint alleged that Johnson was the proprietor of the business carried on at the works of the company, and that he was also the manager of that business. It further stated that the plaintiff was employed by the defendant. As the evidence is not in the record, it is impossible for us to say what proof was made concerning the connection of the appellant Johnson with the works of the Indianapolis Excelsior Manufacturing Company, the nature or extent of his control of the business, or out of what arrangement with that company his liability for the injury to the plaintiff may have arisen. It was possible that he should operate the works at his own expense, for his own profit, and at his own risk, and that he should assume the responsibility for injuries to employes. Nothing in the answers to interrogatories excludes the possibility that such proof was made. The averments of the complaint touching Johnson's relation to the business were ambiguous and indefinite, but they were sufficient, as we think, to admit evidence of the fact that Johnson was oper-

ating them on his own account, and not as the representative of the corporation.

Many of the answers of the jury to interrogatories tend to sustain the theory of the appellant that the accident happened in such a way and from such a cause that the appellant was not legally responsible for it. But the jury had that theory before them, as well as the theory of the appellee. It was directly brought to their attention by very pointed instructions of the court. They rejected it, and adopted the contrary theory. We can not say that they erred in this. No answer to any interrogatory is of such a nature that it necessarily and inevitably overthrows the general verdict. While those answers, which are particularly discussed by counsel for appellant, furnish material for a strong argument in support of appellant's views of the case, they are not of such controlling character as to justify the court in setting aside the general verdict.

The rules by which we are governed in determining this question are clearly stated in *Consolidated Stone Co.* v. *Summit,* 152 Ind. 297, 300, 301: "The general verdict necessarily determines all material issues in favor of appellee, and, unless the answers of the jury to the interrogatories are in irreconcilable conflict with the general verdict, the court did not err in overruling appellants' motion for a judgment in their favor. If such irreconcilable conflict exists, then the court erred in overruling said motion. *Ohio, etc., R. Co.* v. *Trowbridge,* 126 Ind. 391, 393, 394, and cases cited; *Town of Poseyville* v. *Lewis,* 126 Ind. 80, and cases cited; *Rogers* v. *Leyden,* 127 Ind. 50, 59, and cases cited; *Graham* v. *Payne,* 122 Ind. 403, 408, 409; *Indianapolis; etc., R. Co.* v. *Lewis,* 119 Ind. 218, 223. * * * The answers to the interrogatories can not be aided by any presumptions, for the rule is that all reasonable presumptions will be indulged in favor of the general verdict, and none will be indulged in favor of the answers to the interrogatories. *Town of Poseyville* v. *Lewis, supra;*

*Ohio, etc., R. Co.* v. *Trowbridge, supra.* The special findings override the general verdict only when both can not stand; the conflict being such, upon the face of the record, as to be beyond the possibility of being removed by any evidence admissible under the issues in the cause. *Amidon* v. *Gaff,* 24 Ind. 128; *Indianapolis, etc., R. Co.* v. *Lewis,* 119 Ind. 219, 223." See, also, *McCoy* v. *Kokomo R., etc., Co.,* 158 Ind. 662. We find no error, therefore, in the refusal of the court to render judgment for the appellant upon the answers to the interrogatories.

Under the assignment that the court erred in overruling the motion for a new trial, various questions as to the correctness of instructions given, or refused, are properly presented. The objection taken to the sixth instruction is that in its enumeration of the facts essential to a recovery, which the plaintiff must prove, it omits the element of want of knowledge by the plaintiff of the defect in the machine which caused the injury. The instruction, however, does not seem to be wanting in this particular. It was as follows: "6. Before the plaintiff can recover in this action, he must establish three things by a fair preponderance of the evidence: First, that he received injuries *as alleged in the complaint;* second, that the injuries complained of were the immediate and proximate result of the defendant's carelessness and negligence as alleged in the complaint; third, that the plaintiff was free from any carelessness or negligence proximately contributing to such injuries."

By this instruction the jury were told that the plaintiff must prove "that he received injuries as stated in the complaint." It was stated in the complaint that the plaintiff had no knowledge of the defective condition of the machine, and that he was injured while working with it. If he was injured with knowledge of the dangerous condition of the machine, then he did not receive the injuries *as stated in the complaint.* The instruction was not as full and plain upon the fact of knowledge as it might have been, but, if thought

objectionable on that account, the rule of law contended for by the appellant could have been stated more fully by a further instruction tendered by the defendant. Besides, by several other instructions, and especially by the seventeenth, the jury were informed that they could not return a verdict for the plaintiff unless they found that he "did not know of such dangerous and defective condition of said machine, and could not, by the exercise of reasonable care and diligence while operating said machine, in the usual and ordinary manner, have discovered said defective and dangerous condition." The instruction stated no false or erroneous principle of law. It is impeached only on the ground that it did not go far enough. This being so, its omissions could be, and appear to have been, sufficiently supplied by the seventeenth instruction.

Instruction number eight is complained of for the reason that it told the jury "that it is the absolute duty of the employer to provide his employe with reasonably safe appliances and machines with which to do his work, when it should have said that the employer *should exercise reasonable care* to provide such machinery." But the instruction expressly states that "if an employe sustains injury in consequence of the failure or neglect of an employer *to use reasonable care and diligence*" to discharge the duty of providing safe machinery, and keeping it in repair, then the employe, if injured without his fault, etc., would be entitled to recover. Neither is the instruction objectionable because it fails to point out the distinction between contributory negligence and assumption of risk. This instruction did not relate to that subject. Other instructions made that distinction clear.

The tenth instruction stated certain conditions under which a plaintiff could not recover for a personal injury. The fact that it did not state other conditions under which no recovery could be had did not render it objectionable.

Johnson *v.* Gebhauer.

The twelfth instruction is assailed upon the ground that it was not authorized by the allegations of the complaint, and for that reason was misleading, and gave the jury a wider latitude than was permissible under those allegations. The objection is thus stated: "This is an instruction in which the theory of the plaintiff's case is again stated. At the top of page 41, in summarizing the complaint, the court tells the jury that it is alleged that the defendant knew, *or ought to have known,* of the defective condition of the machine. The latter part of this statement is untrue. The allegation of the complaint is that defendant knew of the defective condition. There is no suggestion in it that he ought to have known. In other words, it is a complaint charging actual knowledge, and not constructive knowledge. By this instruction the jury were told that the complaint was that the defendant ought to have known of the defective condition of the machine. * * * It authorized a recovery upon a state of facts not alleged in the complaint, and no authorities need be cited to show that such an instruction was erroneous." The averment of the complaint on the subject of notice is that "defendant had knowledge that said blade and attachments were out of repair, and defective and dangerous, and had such knowledge long enough to repair the same in the exercise of reasonable care." An allegation of knowledge or notice includes not only actual knowledge or notice, but implied or constructive notice; and proof either of actual knowledge, or that the defendant, by the exercise of ordinary care, might have obtained such knowledge, is admissible under the general allegation of knowledge or notice. In view of the authorities, the averment that a defendant might have obtained knowledge of the situation by the exercise of reasonable or ordinary care, seems unnecessary. *Consolidated Stone Co.* v. *Summit,* 152 Ind. 297, 300; *Evansville, etc., R. Co.* v. *Duel,* 134 Ind. 156, 160; *Hunt* v. *City of Dubuque,* 96 Iowa 314, 65 N. W. 319; *City of Ft. Wayne* v. *Patterson,*

3 Ind. App. 34. The instruction did not go beyond the complaint, nor authorize the jury to consider any evidence not properly admissible under its allegations.

The question of the correctness of the refusal of the court to give the eighth instruction asked for by the defendant can not be considered, for the reason that it relates to the evidence in the case, and this, as we have seen, is not in the record.

Finding no error, the judgment is affirmed.