STATE EX REL. YOUNGBLOOD *v.* WARRICK CIRCUIT COURT ET AL.

[No. 26,547. Filed June 11, 1935. Rehearing denied October 21, 1935.]

*Pickens, Gause, Gilliom & Pickens, Ora A. Davis, Roscoe Kipes,* and *Henning & Youngblood,* for appellant.

*Henry E. Buente, Wm. D. Hardy, James P. Ensle,* and *Sanford Trippett,* for appellee.

FANSLER, J.—This is an original action seeking a writ prohibiting Eldo W. Wood, as special judge of the Warrick Circuit Court, from exercising jurisdiction of a cause of action involving an election contest in which Warren W. Martin was the contestor and the relator was the contestee.

It appears that at the November election in 1934 the contestor and the contestee were candidates for the office of judge of the second judicial circuit of the State of Indiana; that the relator was declared elected by the proper election officials, was commissioned by the governor, qualified, and entered upon the duties of the office, and is now the acting presiding judge of said court; that after the relator assumed his duties as judge, Warren W. Martin filed a petition in the Warrick Circuit Court to contest the election of the relator; that relator immediately disqualified himself as judge of said court, and, the parties being unable to agree upon a special judge, the relator, as the regular judge of said court, submitted the names of three disinterested and reputable practicing attorneys, from which list each of the parties struck one name, as provided by statute, leaving the name of Robert D. Markel, of Evansville, who was thereupon appointed as special judge to try the cause. The special judge qualified, and appointed commissioners to recount the ballots. The cause of action was thereafter put at issue by answers and a reply, and was set for trial for December 17th, when the trial was begun. It was concluded on January 9th. On February 4th the court filed special findings of fact, and stated its conclusions of law, to the

effect that relator had received the highest number of legal votes, and was duly elected to the office of judge of the second judicial circuit. The contestor excepted to the conclusions of law, and judgment was rendered in favor of relator. Thereafter, on the 23rd day of February, 1935, the General Assembly enacted and passed an act (Acts 1935, ch. 82, p. 238) relating to the contest of elections, providing for the disqualification of regular and special judges, and the appointment of special judges, section 7 of which is as follows:

"Where the contest involves the election of the judge of the court in which such petition of contest is filed, and the regular judge of such court shall be a party to such proceeding, then, whether such petition of contest is now pending or hereafter commenced, such regular judge shall be disqualified to act in any way in said cause and shall, within three days after the filing of such petition of contest, certify the fact of his disqualification to act in such cause to the governor, who shall thereupon appoint a special judge to try such cause and, if in any such proceeding now pending or hereafter commenced, a judgment of such court, in which the regular judge is a party to the proceeding, has been rendered, decreeing the contestor or the contestee to have received the greatest number of votes and to have been elected to such office, whether such decree or judgment was or is rendered by the regular judge of such court or by a special judge selected from names submitted by such regular judge and thereafter qualified, the regular judge of such court and any such special judge shall be disqualified to act further in said cause and to pass upon any motion for a new trial which may be filed therein by either of the parties to the proceeding, and shall, within three days after the passage of this act, certify such fact of disqualification to the governor who shall appoint a special judge to try and hear all further proceedings in said cause, and in the event the regular judge of the court or any such special judge, so disqualified, shall fail or refuse to certify the fact of his disqualification to the gov-

ernor within the time herein provided, then such fact shall be certified to the governor by the clerk of the court."

Neither the special judge nor the regular judge made any certificate to the governor as contemplated in the above act. On March 1st, Carl M. Gray, a member of the bar of this state, appeared in the Warrick Circuit Court with a certificate from the governor appointing him as special judge to hear all further proceedings in the case. At that time there was nothing pending for determination by the judge, and no motion for a new trial had been filed. Both the relator, the regular judge of the court, and the special judge trying the case, refused to recognize the appointment or to permit Mr. Gray to assume charge of the docket or make any entries in the case, and protested against him attempting to assume jurisdiction of the cause. Thereupon Mr. Gray established himself in a room in the courthouse, and announced that he was assuming jurisdiction of the cause as special judge. The relator entered a special appearance, and objected to Special Judge Gray assuming jurisdiction. The objections were overruled. Thereupon the contestor filed with Mr. Gray, acting as special judge, his motion and reasons for a new trial, which were received and ordered filed. The relator then filed a motion for a change of venue from Mr. Gray, as special judge, which motion was sustained, and the facts certified to the governor. Immediately thereafter Special Judge Markel took the bench in the regular court room, and, after expressing a willingness to hear contestor upon the motion for a new trial, of which offer contestor did not avail himself, overruled the motion. Thereafter Eldo W. Wood, a member of the bar of this state, was appointed by the governor to hear further proceedings in said cause, and on March 6th he appeared before the relator as the regular judge

of the Warrick Circuit Court, and submitted his certificate of appointment. Relator refused to recognize him as special judge, or to permit him to assume the bench, or make any entries on the docket of the court. Mr. Wood then established himself in a room in the courthouse, and announced that he was assuming jurisdiction of the cause. Relator again appeared specially, and objected, which objections were overruled. It is alleged that Eldo W. Wood is assuming to act as special judge in said cause, and that there is confusion in said court because of the conflicting assertions of jurisdiction between Robert D. Markel, the special judge who tried the cause, and Eldo W. Wood, who was claiming jurisdiction of said cause by reason of appointment by the governor under the statute above referred to.

The petition asserts that the act is unconstitutional, or at least inoperative, in so far as it affects the cause of action in question, which is said to be the only action of the kind, affected by the statute, which was pending at the time of its enactment. There is a prayer for a writ prohibiting Eldo W. Wood from assuming, or asserting any right to assume, jurisdiction in said cause as the special judge therein. Upon the filing of the petition an alternative writ issued.

Respondent asserts that the only question presented involves the constitutionality of the act of the legislature referred to, and that jurisdiction to determine that question is in the Warrick Circuit Court; that the relator appeared in person, and by attorney, before Special Judges Gray and Wood, and filed an affidavit for a change of venue from Special Judge Gray; that therefore he submitted to the jurisdiction of the court as so constituted; that the authority of this court to issue writs of prohibition is statutory, and its legitimate scope is to confine inferior courts to the jurisdiction

conferred upon them by law; that the respondent was acting as special judge under appointment by the governor; that the question of the validity of the act referred to will not be determined by the court as so constituted until presented; that a determination of the question will involve an exercise of judicial discretion by the trial court, and that a writ of prohibition will not issue to interfere with the exercise of that discretion.

This position assumes that jurisdiction to determine the question of the constitutionality of the statute, and therefore whether jurisdiction rests in the Warrick Circuit Court with Special Judge Wood presiding as judge thereof, or whether it rests in the Warrick Circuit Court with Special Judge Markel presiding as judge thereof, rests in the former, and that, notwithstanding Judge Markel is asserting jurisdiction, his right to do so may be determined by Judge Wood. To clearly state the position is to demonstrate that it is untenable. The Warrick Circuit Court with Special Judge Markel presiding is an entirely different entity from the Warrick Circuit Court with Special Judge Wood presiding. They are of equal rank; both are asserting jurisdiction. The relator appeared specially and questioned the jurisdiction of Special Judge Gray. After an adverse ruling he is not required to refrain from further protecting his rights. He has also submitted without question to the jurisdiction of Judge Markel. It is obvious that both do not have jurisdiction. The letter and spirit of the statute require that this court determine the question of the jurisdiction now without waiting for two appeals. *Murphy* v. *Daly* (1934), 206 Ind. 179, 188 N. E. 769; *State ex rel. Burk* v. *Sparks* (1931), 202 Ind. 463, 176 N. E. 8; *State ex*

*rel Cook* v. *Circuit Court, etc.* (1923), 193 Ind. 20, 138 N. E. 762.

The respondent correctly asserts that questions concerning the wisdom or expediency of a statute are within the sole discretion of the legislature, and of no concern to the courts. We are therefore not concerned with what is termed the vice of permitting a judge, who is an interested party, or biased, or prejudiced, to suggest the names of judges or attorneys from which the special judge to try the case is to' be selected. It may be noted, however, that the method referred to has been in operation under legislative enactment for many years, and applies to cases of every character, and we are unable to see that an election contest transcends in importance the many forms of action affecting persons and property in which a presiding judge may have an interest, or be biased, or prejudiced, to the extent that he is disqualified. The statute under consideration seeks to provide a different method of selecting special judges in cases involving a contest of election for the office of judge, but has no reference to the practice in other cases in which objections to the method of selection would apply with equal force. We are concerned only with the authority of the legislature under the Constitution. The questions presented would be the same if the statute applied to actions for the contest of wills, or any other form of action.

The question which is presented, then, is, whether the legislature can remove a legally appointed, qualified, and acting special judge of a circuit court before the termination of the case which he was appointed to try, or whether the legislature can grant a change of judge in a specific case after jurisdiction has been acquired.

Section 1 of article 7 of the Constitution provides:

"The judicial power of the state shall be vested in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish." In *State ex rel. Hovey* v. *Noble* (1889), 118 Ind. 350, 367, 21 N. E. 244, it is said: "The Constitution vests the judicial power in every instance, and the legislature in none. The legislature has no judicial power, and can confer none upon any person or tribunal. Under the Constitution it may establish courts, but it does not invest the courts with judicial power; the Constitution alone can do that, for all judicial power comes from that instrument and is vested by it in courts and judges."

Section 10 of article 7 provides: "The General Assembly may provide, by law, that the judge of one circuit may hold the courts of another circuit, in cases of necessity or convenience; and in case of temporary inability of any judge, from sickness or other cause, to hold the courts in his circuit, provision may be made, by law, for holding such courts." It is well settled by the decision of this court that the last quoted article creates the office of special judge, and authorizes the General Assembly to provide by law for the appointment of special judges.

In *Shugart* v. *Miles* (1890), 125 Ind. 445, 447, 25 N. E. 551, it is said: "Our Constitution expressly provides for the appointment of special judges. Constitution, section 10, article 7. By a long line of decisions this constitutional provision has been held to authorize the appointment of special judges by the regularly elected judge. When a person is put in the place of a judge the Constitution, as the source of judicial power, vests him with judicial functions and authority. *State ex rel.* v. *Noble,* 118 Ind. 350; *People ex rel.* v. *Maynard,* 14 Ill. 419. This constitutional investiture is so ample as to enable one who fills the position of a

judge according to the provisions of the Constitution (and he cannot rightfully fill the place otherwise than in accordance with the Constitution), to discharge all the judicial duties pertaining to the place he occupies. To fully discharge his judicial duties, one who occupies the place of a judge by appointment made under the Constitution, and pursuant to the laws enacted by its authority, must have a right to settle and seal a bill of exceptions in a case tried by him, otherwise he cannot fully perform the duties with which the Constitution vests him. Until a bill of exceptions is signed his duties are not fully performed. . . . it is not within the power of the legislature to deprive a judge, regular or special, who holds his position under the Constitution and the laws, of the right to settle and sign bills of exceptions ordered in cases rightfully tried by him; . . ." In *Mayer* v. *Haggerty* (1894), 138 Ind. 628, 635, 38 N. E. 42, it is said: ". . . the special judge was peculiarly the person to whom the petition for a *nunc pro tunc* entry and the motion for a new trial should have been addressed. He was 'the court rendering the judgment.' R. S. 1881, section 1064; Burns R. S. 1894, section 1076. 'When the regular judge yields the bench, calls in a special judge, and duly appoints him to try a designated cause, the special judge thus appointed acquires full authority over the cause throughout all of its stages.' . . . Burns R. S. 1894, section 419, provides that a special judge 'shall have power to hear and determine said cause until the same is finally disposed of.' The law provides for the motion for a new trial, and for petitions and orders for *nunc pro tunc* entries, and in the very nature of things no one else could intelligently dispose of them."

From the language of these cases, and others which might be referred to, it is clear that a special judge of

the circuit court is a constitutional circuit court judge for the purposes of the case in which he was appointed, with all of the power and jurisdiction of a regular judge, and that after he has been appointed his power and jurisdiction flow from the Constitution, and not from legislative enactment.

Section 12 of article 7 of the Constitution provides: "Any judge or prosecuting attorney, who shall have been convicted of corruption or other high crime, may, on information in the name of the state, be removed from office by the Supreme Court, or in such other manner as may be prescribed by law." It is held in *State* v. *Patterson* (1914), 181 Ind. 660, 105 N. E. 228, that, under the quoted provision of the Constitution, the legislature may not prescribe other causes for removal than "corruption or other high crime," and it must be considered settled that the only tribunal which has any jurisdiction of proceedings to remove a circuit judge, either regular or special, is the Supreme Court of Indiana. *State* v. *Redman* (1915), 183 Ind. 332, 109 N. E. 184; *State* v. *Dearth* (1929), 201 Ind. 1, 164 N. E. 489.

It will be noted that the relator, the regular judge of the Warrick Circuit Court, disqualified himself, and, the parties being unable to agree, submitted the names of three disinterested and qualified attorneys; that each of the parties struck one of the names so submitted, and the name of Robert D. Markel remaining, he was appointed and qualified as special judge to try the case. This procedure followed the regular statutory method of selecting a special judge in any action. It is not claimed that the special judge so selected was interested, or biased, or prejudiced, or in any manner disqualified. If he had been, either party might have had a change from him by filing the statu-

tory affidavit. Not having done so, the parties must be deemed to have been satisfied, and their acquiescence must be treated as the equivalent to an agreement that he act as special judge to try the case. This agreement was as binding as any other agreement concerning the case made in open court. It was not against public policy, but was in conformity to the rules of practice and procedure which were in force at the time, and it will be interpreted and enforced in the light of the law as it then existed. The parties must be deemed to have understood that the special judge would "have power to hear and determine said cause until the same is finally disposed of," as provided by section 2-1410, Burns 1933. The trial was conducted before the special judge, and judgment entered in favor of the relator. It was said by the court, in *Johnson* v. *Gebhauer* (1902), 159 Ind. 271, 275, 64 N. E. 855: "A judgment is a contract of record, and its obligation is impaired whenever the observance of those forms and rules of procedure in force when it was obtained, and by which it is protected and sustained, are annulled or set aside."

It is recognized, and obvious, that the judge who tried the case, and heard the testimony, and passed upon the admissibility of the evidence, can more intelligently pass upon the motion for a new trial than one who is a stranger to the proceedings. The advantages of having the judge who tried the case continue until its final termination are recognized in *Shugart* v. *Miles, supra.* The agreement to submit to the special judge protects the party who has recovered the judgment in his right to have the motion for a new trial passed upon by the judge who tried the case, excepting, of course, cases in which the judge becomes physically incapacitated, and cases in which the term of a regularly elected judge expires.

The rule that a regularly elected judge loses jurisdiction to pass upon a motion for a new trial after the expiration of his elective term was recognized and condemned as not commendable, and this court refused to extend the rule to apply to special judges, in *Shugart* v. *Miles, supra.*

It is true that the relator. held his judgment subject to the right in his adversary to have the case reviewed upon motion for a new trial and upon appeal. But the judgment could only be set aside for some legal reason that existed at the time it was rendered. The determination of whether cause exists for a new trial, either upon motion or upon appeal, is a judicial act, and the legislature possesses no judicial power. In *Young et al.* v. *State* (1853), 4 Ind. 301, 303, this court held unconstitutional an act of the legislature which attempted to grant a new trial, and said: ". . . To permit it to dispose of judicial questions . . . would be in the highest degree dangerous to the rights of the individual members of the community." It is true that the statute in question here does not attempt to grant a new trial. It does, however, attempt to grant to the unsuccessful party a change of judge, and to deprive the relator of the right to have the motion for a new trial, and the remaining proceedings in the case, passed upon by the judge who tried the case and to whom both parties voluntarily submitted their case by failure to exercise their right to a change of judge before trial.

The trial of an election contest, like the trial of a will contest, is an action between private adversaries. The right to a change of judge in such actions is a private and personal right, which may be exercised by the parties. The public has an interest in removing from office, and thus from the trial of all

causes, any judge who has been guilty of "corruption or other high crime." But the power to remove is vested in the courts. The public has no special interest in disqualifying a judge from trying a particular cause between private adversaries, because of interest, bias, or prejudice. Once a circuit judge, special or regular, has qualified and taken jurisdiction of a case, the legislature has no power to divest him of jurisdiction, or, by statute, grant to either party a change of judge. Such action would constitute an interference with the rights of the litigants, and with the judicial department of the government that is beyond the power of the legislature.

The statute therefore, in so far as it seeks to remove, or disqualify, or grant a change from, the special judge who tried the case, is inoperative and ineffective to vest jurisdiction in any other judge.

The alternative writ heretofore issued is made absolute.